**MASSACHUSETTS WELFARE RIGHTS ORGANIZATION, Roberta Grant, Ruth Barkley, Shirley Payne, and Louise Maraglia, Plaintiffs,**

v.

**Robert F. OTT, Commissioner of Public Welfare for the Commonwealth of Massachusetts, et al., Defendants.**

**Civ. A. No. 69-428-J.**

United States District Court
D. Massachusetts.

May 5, 1969.

Richard A. Seid, Boston Legal Assistance Project, Boston, Mass., David Lipton, Boston Legal Assistance Project Jamaica Plain, Mass., for plaintiffs.

No appearance for defendants.

## OPINION

JULIAN, District Judge.

This is an action for declaratory and injunctive relief brought to challenge the constitutionality of a policy directive promulgated on March 11, 1969, by the Massachusetts Commissioner of Public Welfare establishing procedures to be followed by personnel at welfare service offices throughout the State in the event of demonstrations, disturbances or sit-ins.

The plaintiffs are the Massachusetts Welfare Rights Organization ("MWRO"), an unincorporated association of welfare recipients who receive public assistance from the Commonwealth of Massachusetts, and several individual members of MWRO who seek to make this a class action on behalf of themselves and all other such welfare recipients.

The complaint seeks a declaratory judgment, 28 U.S.C. §§ 2201, 2202, that the March 11, 1969 policy directive is unconstitutional "on its face and as applied" because of alleged vagueness, because it allegedly "penaliz[es] group efforts to apply for and obtain public assistance," and because it allegedly deprives plaintiffs of rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, "including freedom of speech, assembly and to petition for redress of grievances." Plaintiffs also seek both preliminary and permanent injunctions restraining defendants from implementing the policies set forth in the March 11, 1969 directive. See 42 U.S.C. § 1983; 28 U. S.C. § 1343(3).

The case presently comes before the Court upon plaintiffs' request that a three-judge district court be convened to hear and decide the case. 28 U.S.C. § 2281.

The entire text of the March 11, 1969 policy directive, attached to the complaint as Exhibit A, is reproduced in Appendix A hereto. Plaintiffs complain only about that portion of the policy outlined in the first three numbered paragraphs.

■■ The scope of the action which may and should be taken by the single district judge who initially receives an application for a three-judge district court is limited to certain threshold questions. Hartman v. Secretary of Dept. of Housing & Urban Develop., 1968, D. Mass., 294 F.Supp. 794, 795. The standards he must follow were de-

fined by the Supreme Court in Idlewild Bon Voyage Liquor Corp. v. Epstein, 1962, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794:

> "When an application for a statutory three-judge court is addressed to a district court, the [single judge's] inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute."

■ It is apparent from the face of the complaint in this case, however, that the plaintiffs have not raised any question appropriate for consideration by a district court of three judges under 28 U.S.C. § 2281.[1] Plaintiffs do not challenge the constitutionality of any State statute, nor do they ask that the enforcement, operation or execution of any State statute be enjoined. Their attack is instead limited to the constitutionality of the "policy" established by the March 11, 1969, directive, and it is against that "policy" that their prayer for injunctive relief is addressed. Even assuming that the challenged March 11, 1969 directive is not a "policy" but instead constitutes a "rule" or "regulation" such as the Commissioner is empowered to make by Mass.G.L. c. 18, § 10,[2] the fact remains that plaintiffs challenge the "regulation" rather than the enabling legislation under which the regulation was promulgated.

In these circumstances section 2281 is inapplicable, since it

> "does not encompass injunctions sought on the ground that a valid statute or order is being executed in a manner prejudicial to constitutional rights."

Benoit v. Gardner, 1965, 1 Cir., 351 F.2d 846, 848; see Phillips v. United States, 1941, 312 U.S. 246, 61 S.Ct. 480, 85 L. Ed. 800; Ex parte Bransford, 1940, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249; 1A Moore's Federal Practice ¶ 0.205, p. 2238 (1965).

■ I also rule, as an alternative ground for refusing to convene a three-judge district court, that the complaint fails to raise a substantial federal question.

The March 11, 1969 directive outlines policies which are fair and reasonable on their face and which represent an appropriate exercise by the Commissioner of his power under Mass.G.L. c. 18, § 10 (St.1967, c. 658, § 1) to

> "make and from time to time revise and publish such rules and regulations for the conduct of the business of the department [of public welfare] and the execution of the programs administered by the department as may be necessary or appropriate. * * *"

The policy guidelines are sufficiently specific so as to accomplish legitimate and appropriate governmental objectives —namely, to insulate the granting of "supplementary" or "special" welfare benefits from the pressure of mass demonstrations or sit-ins.

---

1. Section 2281 of Title 28, United States Code, provides:

   "An interlocutory or permanent *injunction restraining the enforcement, operation or execution of any State statute* by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, *shall not be granted* by any district court or judge thereof *upon the ground of the unconstitutionality of such statute* unless the application therefor is heard and determined by a

   district court of three judges under [28 U.S.C. § 2284]." (Emphasis added.)

2. The pertinent part of Mass.G.L. c. 18, § 10 (St.1967, c. 658, § 1) provides as follows:

   "The commissioner shall make and from time to time revise and publish such rules and regulations for the conduct of the business of the department [of public welfare] and the execution of the programs administered by the department as may be necessary or appropriate. * * *"

The March 11, 1969 directive, in paragraph 3, prescribes procedures by which "demands" presented by groups are to be received and handled. In view of that paragraph, plaintiffs' claim that they have been deprived of their right to assemble and to petition for redress of grievances is utterly frivolous.

The application for a three-judge district court is denied and the complaint is dismissed. Burhoe v. Byrne, 1968, D. Mass., 289 F.Supp. 408, 411, petition for leave to file writ of mandamus denied sub nomine Burhoe v. Julian, 394 U.S. 970, 89 S.Ct. 1480, 22 L.Ed.2d 771 (U.S. April 21, 1969).

## APPENDIX A

### Exhibit A

MASSACHUSETTS DEPARTMENT OF PUBLIC WELFARE

March 11, 1969

TO: Regional Administrators

FROM: Office of Field Operations

Any person has a right to come to a welfare service office and to be interviewed regarding his needs. The staff of the welfare service office has a responsibility to interview applicants and recipients and to arrive at a decision regarding those needs in accordance with existing policies.

The right of a person mentioned above does not include freedom to disrupt the operations of any Department office or to enter that part of an office reserved for staff, other than interviewing rooms in the company of a staff member.

In the event of demonstrations, disturbances or sit-ins, the following procedures are to be followed:

1. At any time an unusually large number of individuals enter a welfare service office at the same time or the person in charge of the office knows definitely that an unusually large number of individuals are to arrive in a group, a police detail is to be requested from the local police authority by the person in charge of the welfare service office.

2. When the conditions described in #1 above exist, the person in charge of the office is to instruct all staff members that no supplementary or special grants are to be authorized except for those individuals who are new applicants for whom regular, continuing assistance payments have not yet been instituted.

3. The Department does not intend to permit its staff members to be subjected to mass pressures or coercion or to make decisions under such conditions. Therefore, when the circumstances described in #1 above are determined by the person in charge to exist, no service is to be extended to members of the group involved. If demands are presented by the group, the office head is to accept them, informing the group or its spokesmen of Departmental policy in relation to the particular requests made and about procedures established by this memorandum. There should then be no necessity for prolonged discussion with the group or its spokesman.

4. When any non-staff members enter that portion of the welfare service office reserved for staff functions, except when requested by a staff member to do so, they are to be asked to return to the reception area. If they refuse, a police detail is to be requested and the person in charge will ask that they be removed.

5. At any time a staff member is threatened with bodily harm or prevented by the physical action on the part of an applicant or recipient from performing her duties, a police detail is to be requested by the person in charge and asked to take appropriate action.

6. If applicants and recipients or others are in a welfare service office at 4:45 p. m., and it appears they do not intend to leave, they are to be requested by the person in charge to do so. If a police detail is not already in the building, one is to be requested and the person in charge will ask the police to remove anyone remaining in the office without au-

thority at 5:00 p. m. If insisted upon by the police, the staff member in charge of the welfare service office will sign a formal complaint.

This memorandum replaces the release dated December 13, 1968 on the same subject and Regional Administrators are directed to make it available to all welfare service offices.