Therese **ROBERGE** and Carolyn Wells on behalf of their Minor Children and on behalf of All Persons Similarly Situated

v.

Paul K. **PHILBROOK** as Commissioner of the Vermont Department of Social Welfare.

Civ. A. No. 5805.

United States District Court, D. Vermont.

May 15, 1970.

John A. Dooley, III, and Richard C. Blum, Vermont Legal Aid, Inc., Burlington, Vt., for plaintiffs.

William S. Roby, III, Asst. Atty. Gen., State of Vermont, Montpelier, Vt., for defendant.

## OPINION AND ORDER

LEDDY, Chief Judge.

The present action is brought by Therese Roberge and Carolyn Wells on behalf of their minor children and all others similarly situated against the Deputy Commissioner of the Vermont Department of Social Welfare. The plaintiffs are all recipients of welfare assistance under the State Aid to Needy Families with Children (A.N.F.C.) Pro-

gram. The present A.N.F.C. plan in Vermont is challenged by the plaintiffs on two grounds:

(1) The plan for A.N.F.C. distributions contains a standard of need calculation for recipients which does not reflect current necessities while that same standard under the Aid to Aged, Blind and Disabled (A.A.B.D.) Program does reflect current needs. This disparity of treatment between two classes of welfare recipients is alleged by the plaintiffs to be an unjustifiable discrimination which denies the class of A.N.F.C. recipients equal protection of the laws under the fourteenth amendment.

(2) The defendant has not complied with the Social Security Act, § 402(a)(23), 42 U.S.C.A. § 602(a)(23)(1969) because grant levels to A.N.F.C. recipients have not been raised to reflect current cost of living indices as required by that act. The plaintiffs seek declaratory relief only.

Two threshold questions emerge from the plaintiffs' complaint and prayer for relief.

I.  Does this court have subject matter jurisdiction over the claim?

II.  Must a determination of the questions presented be heard by a Three-Judge District Court?

### I.  *Subject Matter Jurisdiction*

The plaintiffs assert subject matter jurisdiction under two statutory grants. First, they maintain that they come within the authorization of 28 U.S.C.A. § 1343(3)–(4) (1962) providing for jurisdiction without regard to the amount in controversy when the protection of civil rights is involved. As an alternative, the plaintiffs claim that jurisdiction is supported under the general federal question statute 28 U.S.C.A. § 1331 (1966). The jurisdictional amount requirement of that section is satisfied according to the plaintiffs because all claims of all members of the class, as de-

fined under Federal Rule of Civil Procedure 23(b)(2), should be aggregated.

### A.  *Jurisdiction Under Section 1343.*

The first issue is whether there is jurisdiction without regard to the amount in controversy under subsections 1343(3) and (4). The relevant parts of section 1343 provide:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> \*     \*     \*          \*     \*
>
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
>
> (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

The plaintiffs seek to bring the equal protection allegation in their complaint within the cover of section 1343(3); and assert section 1343(3) and (4) as jurisdictional support for the statutory claim under the Social Security Act. The jurisdictional application of section 1343 will be examined with regard to both claims.

### (1) *Equal Protection—Section 1343(3)*

▇▇▇      For the deprivation of a right to give rise to 1343(3) jurisdiction that right must be either: (1) *secured* by the constitution, or (2) *secured* by an Act of Congress providing for equal rights of citizens. The two separate jurisdictional grants within the subsection are differentiated by the document (Constitution or Act of Congress) under which the right infringed upon is secured.[1] The plaintiffs' first allegation

---

1. When a complaint alleges a single act characterized as both a statutory and con-

stitutional violation, it is imperative that both allegations be separately examined in

is grounded in the equal protection clause of the fourteenth amendment and pointed at the first part of section 1343(3).

■■ Although the language of the subsection seems to indicate otherwise, *not every claimed violation of a constitutional right will support jurisdiction under the first part of section 1343(3).* The distinction between those constitutional infringements that will support jurisdiction and those that will not was first mentioned by the Supreme Court in Holt v. Indiana Mfg. Co., 176 U.S. 68, 72, 20 S.Ct. 272, 44 L.Ed. 374 (1900) but the source of its true creation and explanation is Justice Stone's opinion in Hague v. C. I. O., 307 U.S. 496, 518–532, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).[2] In Justice Stone's words, section 1343(3) supports jurisdiction " * * * whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights, * * *" 307 U.S. at 531, 59 S.Ct. at 971. If the right involved is not capable of pecuniary valuation be-

cause of its relation to a constitutional guarantee of personal liberty, section 1343(3) jurisdiction is properly invoked. Where the party claims a property right amenable to a dollar and cents valuation, the jurisdictional amount under section 1331 must be met, absent a special statutory grant. See C. Wright, Law of Federal Courts § 32 at 109–110 (2d ed. 1970).

Although its historical basis has been questioned and criticized,[3] the distinction remains as a vital part of the jurisdictional law in the Second Circuit. Gold v. Lomenzo, No. 34144, 425 F.2d 959 (2d Cir. Jan. 22, 1970); Eisen v. Eastman, 421 F.2d 560, 566 (2d Cir.1969); McCall v. Shapiro, 416 F.2d 246 (2d Cir. 1969). See Hornbeak v. Hamm, 283 F. Supp. 549 (M.D.Ala.1968), aff'd per curiam, 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed. 2d 14 (1968).

■ Stating the test as formulated in *Hague* and as adopted by these courts is far easier than applying it to the present facts. The distinction is manageable in the abstract. When the plain-

terms of the two separate jurisdictional grants within subsection (3). The inclusion of a purely constitutional claim within the *first part of subsection (3) does* not bring the statutory claim within the second part and vice versa. A single act may cause constitutionally recognized damages within the *Hague* distinction and yet that same act may not infringe on any right protected by an "Act of Congress providing for equal rights". Although, it may violate other congressional legislation. See Rosado v. Wyman, 414 F.2d 170 (2d Cir. 1969), rev'd, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (April 6, 1970) and McCall v. Shapiro, 416 F.2d 246 (2d Cir. 1969) and the discussion of these cases *infra.* On the other hand, there are situations in which conduct may violate an Act of Congress providing for equal rights and not actually violate the Constitution. Section 5 of the fourteenth amendment permits Congress to proscribe certain constitutionally permissible conduct, which in itself does not violate the fourteenth amendment, on the theory that forbidding some types of constitutional conduct *aids* in protecting rights secured by the amendment. See Katzenbach v. Morgan, 384 U.S. 641, 649–656, 86 S.Ct. 1717, 16 L.Ed.2d 828

(1966) as it is reconciled with Lassiter v. Northampton County Bd. of Election, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959). See also, Survey Note, Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1072–1076 (1969).

2. Despite the absence of a majority opinion in *Hague*, the opinion by Justice Stone stands intact as the jurisdictional holding of the case. The other majority opinion found section 1343 applicable only to actions alleging some infringement on the privileges and immunities of national citizenship. This narrow reading of section 1343 was apparently unacceptable to a later Court because all the justices rejected it in Monroe v. Pape, 365 U.S. 167, 170–171, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

3. Criticizing the distinction: Note, Section 1343 of Title 28—Is the Application of the "Civil Rights-Property Rights" Distinction to Deny Jurisdiction Still Viable?, 49 B.U.L.Rev. 377, 381–384 (1969); Note, The Proper Scope of The Civil Rights Act, 66 Harv. L.Rev. 1285, 1289–1291 (1953). Defending the distinction: Eisen v. Eastman, 421 F.2d 560, 565–566 (2d Cir. 1969).

tiff seeks redress for property which has been or will be taken; or when the plaintiff alleges that his personal rights have been infringed because of some violation of a purely proprietary right, only section 1331 can support jurisdiction. However, if the plaintiffs' rights to life and liberty are interfered with by the government, section 1343(3) applies and the amount in controversy need not be alleged. The distinction is tied to the recognition that it is unfair to require the plaintiff to pay for his jurisdiction when fundamental personal rights, which defy monetary valuation, are involved.

Unfortunately, many valuable constitutional rights do not lend themselves to classification within the lines of Justice Stone's distinction. A practical application of the test stated above is difficult when both rights of property and rights of personal liberty are involved. It falls upon the district judge to find the proper characterization for each claim by analyzing the gist of the complaint.

In Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969) Judge Friendly attempted to sort out some of the cases dealing with the applicability of section 1343(3) by looking to the gist of each claim. Clearly within the scope of the jurisdictional grant in section 1343(3) are those cases involving first amendment infringement, Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L. Ed. 1019 (1951); Berman v. Board of Elections for the City of New York, 420 F.2d 684 (2d Cir. 1969); voting rights, Baker v. Carr, 369 U.S. 186, 200 n.19, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); racial separation, McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L. Ed.2d 622 (1963); unreasonable searches and other arbitrary police action, Monroe v. Pape, 365 U.S. 167, 81 S.Ct.

473, 5 L.Ed.2d 492 (1961). Outside the scope of section 1343(3) are those cases involving the constitutionality of state tax statutes. Hornbeak v. Hamm, 283 F.Supp. 549 (M.D.Ala.), aff'd per curiam, 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968); Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo.1962), aff'd, 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963) and those actions concerned exclusively with the taking of property. Howard v. Higgins, 379 F.2d 227 (10th Cir. 1967).[4]

As the cases in these two categories indicate, the distinction goes to the object of the constitutional deprivation and not to the form which the deprivation takes. For purposes of this distinction, the due process and equal protection clauses do not have a substantive content of their own, independent of the injury that might result from their violation. Hornbeak v. Hamm, 283 F.Supp. 549 (M.D.Ala.), aff'd per curiam, 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968). See Note, Section 1343 of Title 28—Is the Application of the "Civil Rights-Property Rights" Distinction to Deny Jurisdiction Still Viable? 49 B. U.L.Rev. 377, 385–386 (1969).[5]

Even with a proper focus on the object of the deprivation, categorization is difficult between the two extremes. It is made more so by the failure of some courts to discuss the distinction. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Borderline cases which do discuss the issue seem to indicate that when elements of both property rights and personal rights can be found, section 1343(3) will support jurisdiction. See Gold v. Lomenzo, No. 34144 at 961 of 425 F.2d (2d Cir. Jan. 22, 1970); Eisen v. Eastman, 421 F.2d 560, 563–565 (2d Cir. 1969) and D. Currie, Federal Courts 428–429 (1968). In *Gold*, suit was brought by a real estate broker to enjoin the New York Secre-

---

4. *But cf.* Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964).

5. Although there is dicta in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that the right to "equal treatment" and "due process" have status as independent civil rights.

tary of State from suspending his license and imposing conditions on its restoration. The Court found jurisdiction properly invoked under 1343(3) because

\* \* \* [A] challenge to the revocation of a license to engage in an occupation "can be viewed about equally well as complaining of a deprivation of the personal liberty to pursue a calling of one's choice or of the profits or emoluments deriving therefrom."

Gold v. Lomenzo, No. 34144 at 961 of 425 F.2d. In *Eisen* Judge Friendly indicates that the *Hague* distinction should be generously construed so as to find the element of personal liberty at the gist of the action whenever elements of both types of rights are involved. 421 F.2d at 564–565.

Having these criteria in mind, the next problem is analyzing the present claim and placing it in or out of section 1343(3).

The plaintiffs claim that they have been denied equal protection of the laws. As a class, they claim they are being treated differently and discriminately from other welfare recipients. The subject matter of the right is the thing which A.N.F.C recipients are deprived of in comparison to the whole class of welfare recipients. Assuming the truth of the plaintiffs' allegations for the purpose of the jurisdictional question involved, the welfare checks of A.N.F.C. recipients are smaller than they ought to be. They are smaller than they ought to be because, as a class and without justification, A.N.F.C recipients are not being treated the same as other welfare recipients. If the A.N.F.C. recipients were treated on an equal footing with other groups receiving welfare benefits, their checks would be larger. The gist of this claim for purposes of applying the *Hague* distinction centers on a sum of money equal to the difference between what the plaintiffs now receive in welfare benefits and what they would receive if they were treated the same as other welfare recipients.

Because the bare bone object of the dispute is a sum of money, there is a strong temptation to pigeonhole this claim with those involving property rights, forcing it outside the scope of section 1343(3) jurisdiction. Considering the position of the welfare recipient, however, such an analysis would be extremely sterile. A loss of a few dollars a month to those on or below the poverty level creates real restraints on personal freedom and endangers the basic qualities of life without which liberty is little more than a concept. This is especially true when children are affected. Certainly welfare payments take on elements of personal deprivation defying valuation as well as elements of a purely proprietary nature.

Welfare claims of various types have found jurisdictional support in recent federal decisions apparently under the sanction of section 1343(3). Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (April 6, 1970), rev'g, 414 F.2d 170 (2d Cir. 1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (March 23, 1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Jefferson v. Hackney, 304 F.Supp. 1332 (N.D.Texas 1969); Rothstein v. Wyman, 303 F. Supp. 339 (S.D.N.Y.1969) and Westberry v. Fisher, 297 F.Supp. 1109 (D.Me. 1969). While generally these cases fail to discuss the problems raised by *Hague* it cannot be assumed that the distinction was either overlooked or overruled.

In King v. Smith, 392 U.S. 309, 88 S. Ct. 2128, 20 L.Ed.2d 1118 (1968) the Supreme Court expressly found jurisdiction under section 1343(3) where a welfare recipient challenged the validity of Alabama's "substitute father" regulation. The petitioner challenged the State's action under the regulation terminating her benefits because she was visited by, and had sexual relations with, a man. Without explanation, the Court stated in a footnote that: "Jurisdiction was conferred on the court by 28 U.S.C. §§ 1343(3) and (4)." 392 U.S. at 312 n. 3,

88 S.Ct. at 2130. Because the Court in *Smith* did not attempt to categorize the gist of the constitutional claim in terms of the *Hague* distinction, it was unclear whether the Court envisioned all deprivations of welfare payments within the range of an infringement of personal liberty or whether the substantive infringement in *Smith* was found to have pronounced first amendment overtones making 1343(3) applicable. In Eisen v. Eastman, 421 F.2d at 564, two elements in *Smith* are mentioned, either of which might bring it within the *Hague* distinction and section 1343(3). The first is that any infringement of the petitioner's freedom of association would carry the damage outside the limited sphere of economic loss. Presumably, this view would extend 1343(3) jurisdiction only to those welfare claims where the economic loss to recipients is linked to a separate infringement of personal liberty. See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), noted in 21 Syr.L.Rev. 303, 305–306 (1969).

One district court opinion expressly held that when the economic damage flowing from a denial of welfare benefits is coupled with a separate deprivation of personal liberty, jurisdiction exists without regard to the amount in controversy. Sweeney v. Pennsylvania Dept. of Public Assistance Board, 33 F. Supp. 587 (M.D.Pa.1940), aff'd, 119 F. 2d 1023 (3d Cir.), cert. denied 314 U.S. 611, 62 S.Ct. 74, 86 L.Ed. 491 (1941).[6]

The existence of a personal right as one of the elements of damage in welfare cases may be asserted on broader grounds, however. In *Eisen*, it is noted that *Smith* may contain a second element of personal liberty which flows from any termination of welfare benefits at least where children are involved.

It is suggested that the regulation in *Smith* infringed on the liberty of the children in question to grow up with financial aid for their subsistence. If *Smith* is to be reconciled with *Hague* on this ground, then the jurisdictional test in *Smith* is much broader than the one envisioned by the court in *Sweeney*. In this context, any constitutional challenge to the termination of A.N.F.C. benefits would seem to involve elements of personal liberty not capable of monetary valuation.[7]

---

6. In that case, the petitioner who was living with several relatives, had been denied public assistance because of a Welfare Department regulation providing that where several persons are living together as a family unit, no one in that unit was eligible for relief so long as the total income of the unit was equal to or greater than the budget allowance for that number of persons established by the department. The Court considered the question of jurisdiction and held that it was not necessary for the plaintiff to meet the jurisdictional amount requirement because his personal rights under the constitution were at stake, citing *Hague*. 33 F. Supp. at 588. In *Sweeney*, however, unlike *Smith*, the petitioner's freedom to choose the location of his home and the character of his associations was expressed as the gist of the claim. See also Doe v. Kurtis, 306 F.Supp. 509 (S.D. N.Y.1969).

7. This view of *Eisen* cannot be maintained without some reflection, however. In a footnote, Judge Friendly indicates that some welfare claims *would be barred* from federal court unless the jurisdictional amount requirement was satisfied, because some would not involve the infringement of personal liberty. Eisen v. Eastman, 421 F.2d 560, 566 n. 10 (2d Cir. 1969). By way of illustration, he cites Rosado v. Wyman, 414 F.2d 170, 175–178 (2d Cir. 1969), rev'd, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (April 6, 1970), a case involving an A.N.F.C. claim.

On first impression, it is not clear what point *Rosado* was intended to exemplify. Since the opinion in *Eisen*, the Supreme Court has reversed the Second Circuit holding in *Rosado*, therefore, it might be well to mention both *Rosado* opinions in light of *Eisen*.

At the trial level there were two separate allegations in *Rosado*, as in the instant case, one constitutional and one statutory. The constitutional claim was mooted by a three judge panel, and with only the statutory claim in controversy the case was referred back to a single judge. The discussion of the statutory claim by the Second Circuit centered on the problem of pendent jurisdiction and

By inference or silent assent, the recent federal decisions, including those by the Supreme Court, seem to adopt this broader view of the welfare claimant's jurisdictional status when his claim is constitutional in nature and does not involve the classification of statutory provisions. The idea has developed, if somewhat tacitly, that the termination or denial of welfare benefits involves more than just an economic loss.

In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (March 23, 1970) the Supreme Court was asked to determine the nature of a welfare recipient's right to be heard before benefits are withdrawn. The constitutional allegation was grounded in the due process clause but the gist of the deprivation was the loss of welfare benefits alone. In deciding that an evidentiary hearing was required before termination, the Court assumed jurisdiction existed apparently pursuant to section 1343(3). Although the problem of jurisdiction was not discussed, the nature of the welfare recipient's right to receive benefits

was. The court defined these rights as being in the nature of "entitlements". The welfare entitlement was found to be analogous to the license of a doctor, lawyer, or the franchise of an automobile dealer. It was characterized as a device to aid security and independence. 397 U.S. at 262, 90 S.Ct. at 1017 n. 8. The Second Circuit has already held that when a real estate broker's license is the object of a constitutional deprivation, the resulting damage is in the nature of a personal right within section 1343(3). Gold v. Lomenzo No. 34144 at 961 of 425 F.2d (2d Cir. Jan. 22, 1970). It is the clear import of *Goldberg* that welfare entitlements are just as essential to independence as are other more traditional entitlements, many of which also flow from the state. See Rothstein v. Wyman, 303 F.Supp. 339, 346–347 (S.D. N.Y.1969); in silent accord, Jefferson v. Hackney, 304 F.Supp. 1332 (N.D. Tex.1969) and Westberry v. Fisher, 297 F.Supp. 1109 (D.Me.1969).

■ Welfare benefits are the staff of personal independence and security to

---

the independent application of the last part of subsection 1343(3) and subsection 1343(4). 414 F.2d at 178, and 414 F.2d at 181 (Lumbard, C. J., concurring). The question posed in relation to the independent application of section 1343 was whether or not the Social Security Act was an Act of Congress "providing for equal rights" *or* "providing for the protection of civil rights" within the last part of subsection 1343(3) and subsection 1343(4), respectively. The controversy centered on the proper classification of an Act of Congress, not the object of a constitutional infringement. *Rosado* did not conclude that a naked constitutional deprivation would be jurisdictionally insufficient in the context of an A.N.F.C. claim. In fact, in handling the issue of pendent jurisdiction, all three judges suggested that the mooted constitutional claim did support 1343(3) jurisdiction.

Although expressing different views on the nature and proper exercise of pendent jurisdiction, all three judges concluded that subject matter jurisdiction had attached at the outset of the suit before the constitutional claim became moot. 414 F. 2d at 175, 414 F.2d at 180 (Lumbard C. J., concurring), 414 F.2d at 182 (Feinberg J., dissenting). See also Case Note,

Pendent Jurisdiction and Primary Jurisdiction: Is Failure to Defer to an H.E.W. Study an Abuse of Discretion?, 50 B.U.L.Rev. 97, 100 (1970).

On April 6, 1970, the Supreme Court reversed the holding of the Second Circuit in *Rosado*. The Court held that pendent jurisdiction *did exist* in the single judge from the outset and that he did not abuse his discretion by exercising this jurisdiction when the case was referred back to him by the three judge panel. The Court clearly held as axiomatic to its finding of pendent jurisdiction that original jurisdiction was conferred by section 1343(3) because of the constitutional allegation in the complaint. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (April 6, 1970).

*Rosado* is strong support for the use of broad guidelines in classifying welfare claims within 1343(3) when the right infringed is secured by the Constitution. The reference to *Rosado* in *Eisen* is an attempt to illustrate the jurisdictional problems that the welfare recipient may encounter. But, *Rosado* is also consistent with, and an exemplification of, the less restrictive of the two tests suggested in *Eisen* for reconciling King v. Smith, with the *Hague* distinction.

those who receive them. This is especially true when the recipients are innocent children who have no control over their "entitlement". To hold otherwise would be to mock economic reality. The plaintiffs' equal protection claim falls within section 1343(3) and this court has jurisdiction without regard to the amount in controversy.

**(2) *Social Security Act Violation— Pendent Jurisdiction.***

In Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (April 6, 1970), the Court left undecided the question of whether the last part of section 1343(3) would give independent jurisdictional support to a suit under the Social Security Act. The cases in this circuit have held against such jurisdiction. See McCall v. Shapiro, 416 F.2d 246 (2d Cir. 1969) and Rosado v. Wyman, 414 F.2d 170, 178 and 414 F.2d at 181 (Lumbard, C. J., concurring) (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (April 6, 1970). However this court does have pendent jurisdiction to decide the statutory claim and should exercise such jurisdiction under the circumstances. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (April 6, 1970). See also Jefferson v. Hackney, 304 F.Supp. 1332 (N.D.Tex.1969). Because jurisdiction for both claims has been established, this court need not decide whether or not the plaintiffs have satisfied the jurisdictional amount requirement of section 1331.

**II. *Three Judge Court***

As amended, the plaintiffs' complaint seeks declaratory relief only. The question is whether a three judge court is required when a state regulation is directly attacked but the prayer is for declaratory relief only.[8] The relevant statute is 28 U.S.C.A. § 2281 (1965). It provides that:

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

By express language, the statute makes the three judge tribunal requisite to the granting of any "* * * interlocutory or permanent injunction * * *." The accepted learning is that:

A three-judge court is to be invoked *only* where the complaint seeks injunctive relief, and is not necessary if the unconstitutionality of a statute is drawn in question without any prayer for the restraint of its enforcement. (Emphasis added.) (Footnote omitted.)

C. Wright, Law of Federal Courts § 50 at 190 (2d ed. 1970). See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S. Ct. 554, 9 L.Ed.2d 644 (1963), (declaratory judgment under 28 U.S.C.A. § 2282); Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), (action to secure judicial review of administrative order under Social Security Act).

Although the Supreme Court has never decided the exact issue raised here

---

**8.** It may be that the welfare plan under attack in this case is not a binding "regulation"; but rather only a "policy" established by directive. It appears that the Vermont Department of Social Welfare had not, as of the date of the hearing on jurisdiction, brought its A.N.F.C. regulations within certain provisions of the Vermont Administrative Procedure Act. 3 V.S.A. §§ 803, 805 (Supp. 1969). See also the limited exemption in 3 V.S.A. § 816 (Supp.1969). If the plan here is not a binding regulation but only a "policy directive", a three judge court is not required regardless of the relief prayed for. Massachusetts Welfare Rights Organization v. Ott, 299 F. Supp. 296, 298 (D.Mass.1969). See also C. Wright, Law of Federal Courts, § 50 at 190 (2d ed. 1970).

under section 2281, it has decided the same issue under section 2282. Kennedy v. Mendoza-Martinez, 372 U.S. at 152–155, 83 S.Ct. 554. *Mendoza-Martinez* involved a suit for declaratory relief by a deported expatriot challenging the constitutionality of Section 401(j) of the Nationality Act of 1940 and Section 349(a) (10) of the Immigration and Nationality Act of 1952. The Supreme Court characterized the plaintiffs' complaint as one seeking a declaratory judgment *only* and as such not requiring disposition by a three judge court. Section 2281 and section 2282 are sister statutes, the former deals with attacks on statutes and authorized regulations of the various states, while the latter deals with similar attacks on Acts of Congress and regulations thereunder. In *Mendoza-Martinez* the Court defined section 2281 as the complement of section 2282 and suggested that the history of both statutes fell within the same congressional purpose, namely:

> * * * [T]o prevent a single federal judge from being able to paralyze totally the operation of an entire regulatory scheme, either *state* or *federal*, by issuance of a broad injunctive order. (emphasis added.)

372 U.S. at 154, 83 S.Ct. at 560.

After outlining the possible disruptive effect of *injunctive orders* on legislative and administrative policy, the Court distinguished the declaratory judgment in terms of the policy behind sections 2282 and 2281:

> The present action, which in form was for declaratory relief and which in its agreed substance did not contemplate injunctive relief, involves none of the dangers to which Congress was addressing itself. The relief sought and the order entered affected an Act of Congress in a totally noncoercive fash-

ion. There was no interdiction of the operation at large of the statute. It was declared unconstitutional, but without even an injunctive sanction against the application of the statute by the Government to Mendoza-Martinez. Pending review in the Court of Appeals and in this Court, the Government has been free to continue to apply the statute. That being the case, there is here no conflict with the purpose of Congress to provide for the convocation of a three-judge court whenever the operation of a statutory scheme may be immediately disrupted before a final judicial determination of the validity of the trial court's order can be obtained. Thus there was no reason whatever in this case to invoke the special and extraordinary procedure of a three-judge court.

372 U.S. at 155, 83 S.Ct. at 560. Although questions of federalism run throughout suits involving section 2281, while absent from suits under section 2282, it does not appear that the drafters of either statute intended a policy distinction. The language employed is basically identical. The fear that one judge may disrupt the legislative machinery at either the state or federal level with an ill considered order seems to be at the crux of the matter in both sections.

Although section 2281 often involves the delicate balance between state and federal power, it cannot be characterized as a more dangerous tool than 2282 because the latter section deals with an area where the decision of a single judge may be set above the legislative will of congress and not just a local state legislature. Although there is authority to the contrary, see Smith v. Pearson, 294 F.Supp. 611 (N.D.Miss.1968), I do not believe that existing law requires the empanelling of a three judge court.[9]

9. Congress may well decide to include a prayer for declaratory relief within the operation of the Three-Judge Court Act. The American Law Institute has recommended that the Three-Judge Court Act be made applicable to suits for declaratory relief. But the Committee Notes

make clear that such a proposal *breaks with the existing law.* American Law Institute, Study of Division of Jurisdiction Between State and Federal Courts § 1374 *and following note* (Official Draft 1969); American Law Institute, Study of Division of Jurisdiction Between State

### III. CONCLUSION

Subject matter jurisdiction of the plaintiffs' equal protection claim is conferred by 28 U.S.C.A. § 1343(3) (1962). Similarly, plaintiffs' second claim based on section 402(a) (23) of the Social Security Act is properly within the pendent jurisdiction of the court. The complaint does not ask for relief which must or should be granted by a three judge panel. The plaintiff A.N.F.C. recipients may proceed as a class under Rule 23 of the Federal Rules of Civil Procedure, and the case shall be set for hearing on the question of appropriate notice. It is so ordered.

and Federal Courts, 245–246 (Tentative Draft No. 6, 1968). See also Field, Jurisdiction of Federal Courts—A Summary of American Law Institute Proposals, 46 F.R.D. 141, 154 (1969).