Michael James GERMAN, Plaintiff,

v.

Wilbur SCHMIDT and Warren L. Ritscher, Defendants.

No. 69–C–8.

United States District Court,
W. D. Wisconsin.

July 16, 1971.

Rolfe E. Hanson, Madison, Wis., (appointed), for plaintiff.

Sverre O. Tinglum, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

Plaintiff is presently a prisoner at the Wisconsin State Prison, at Waupun, and was formerly a prisoner at the Wisconsin Correctional Institution at Fox Lake, Wisconsin. Defendant Schmidt is secretary of the Wisconsin Department of Health and Social Services, and defendant Ritscher is a cashier at the Fox Lake Institution. Plaintiff alleges that certain actions of defendants have deprived him of rights secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States. The action is brought under 42 U.S.C. § 1983, with jurisdiction claimed under 28 U.S.C. § 1343(3).

The complaint, as amended, alleges that plaintiff has been charged with escape and with theft of a motor vehicle; that plaintiff has not yet been convicted on the escape charge; that the charge of theft of a motor vehicle has been dismissed; and that defendants are withholding $40 from plaintiff's prison account for recovery of the allegedly stolen vehicle.[1] Plaintiff seeks an injunction prohibiting defendants from withholding the $40 from his prison account.

Defendants have moved to dismiss upon the grounds that venue is laid in the wrong district; that the court lacks jurisdiction over the subject matter; and that the complaint fails to state a claim upon which relief can be granted.

On a motion to dismiss, I must accept the allegations of the complaint as true. Gardner v. Toilet Goods Ass'n., 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). An action, especially under the Civil Rights Act, should not be dismissed on the pleadings unless it appears to a certainty that plaintiff is entitled to no relief under any state of the facts, which could be proven in support of his claim. Escalera v. New York City Housing Authority, 425 F.2d 853, 857 (2d Cir. 1970); Barnes v. Merritt, 376 F.2d 8 (5th Cir. 1967); York v. Story, 324 F.2d 450, 453 (9th Cir. 1963), cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964).

## VENUE

Paragraph 4 of the amended complaint alleges that "defendants [plural] have withheld an amount of $40 from plaintiff's prison account for recovery of the alleged stolen vehicle." The amended complaint does not allege the place of residence of either defendant. The motion to dismiss alleges that defendant Ritscher is a resident of the Eastern District of Wisconsin; the motion implies that defendant Schmidt is a

---

1. The complaint, amended complaint, and motion to dismiss do not reveal it, but the dispute makes sense only if the inference is drawn that the alleged escape was from a state institution and that the allegedly stolen vehicle belonged to the state.

resident of the Western District. No proof is offered in either respect. However, I will assume that defendant Schmidt resides in the Western District and defendant Ritscher in the Eastern District. Venue may be laid in either district. 28 U.S.C. § 1392(a). The motion to dismiss for improper venue is denied without prejudice to later renewal if defendants, by appropriate procedure, can provide this court with additional facts and law bearing on the issue.[2] Abrams v. Bendix Home Appliances, 92 F.Supp. 633 (S.D.N.Y.1950).

### JURISDICTION

Diversity jurisdiction is not claimed. Nor is jurisdiction claimed under 28 U.S.C. § 1331, which requires that the matter in controversy exceed the sum or value of $10,000.

If jurisdiction is present, it must arise from 28 U.S.C. § 1343(3)., which confers "jurisdiction of any civil action authorized by law to be commenced by any person * * * [to] redress the deprivation, under color of any State law * * * of any right, privilege or immunity secured by the Constitution of the United States * * *"; there is no requirement of a minimum sum or value. Defendants contend that this plaintiff is asserting a right to property, which is true, and that § 1343(3) does not confer jurisdiction over actions to vindicate rights to property.

◼ In Ridley v. Nelson, in which an unpublished opinion was entered by the Court of Appeals for the Seventh Circuit, Case No. 71–1018, June 4, 1971, a plaintiff had sued a sheriff claiming that the sheriff had · confiscated $360 of his money on his arrival in a jail and had refused to return it. The Court of Appeals affirmed an order dismissing the action, and it said:

" * * * [T]he complaint purports to proceed under 28 U.S.C. § 1343 as a

civil rights case. Inasmuch as this is a suit for protection of a property right, the district court did not have jurisdiction to redress the alleged deprivation. Gray v. Morgan, 371 F.2d 172, 175 (7th Cir. 1966)."

I am bound by this holding. This action must be dismissed, and the order at the foot of this opinion will dismiss it.

However, because the opinion on the point in Court of Appeals in *Ridley* is not articulated in any degree, because, I suggest with respect, Gray v. Morgan, the sole authority cited in *Ridley,* is inadequate support for the holding in *Ridley,* because I believe that the issue has never been resolved by the Supreme Court of the United States, and because I believe that the holding in *Ridley* is unwise, I have decided to express an opinion on this important issue.

There has been no direct discussion of the issue by the Supreme Court since Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). The views of the seven members of the Court who participated in that case, are expressed in five separate opinions. Of these, the opinion of Justice Stone, in which Chief Justice Hughes and Justice Reed joined, is significant here. The problem to which Justice Stone directed his remarks in *Hague* was to reconcile the provisions of two jurisdictional statutes, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3). Section 1331 confers federal jurisdiction in a civil action wherein the matter in controversy "arises under the Constitution * * * of the United States," but only if the matter in controversy exceeds the sum or value of $10,000. On the other hand, without regard to the sum or value of the matter in controversy, § 1343(3) confers federal jurisdiction in a civil action authorized by law to be commenced by any person "to redress the deprivation, under color of any State Law * * *, of any right, privilege or immunity secured by the Constitution."

---

2. Hereinafter, this action is dismissed on other grounds. Unless the order of dismissal is set aside thereafter for any

reason, there will be no occasion for further inquiry on the venue question.

The apprehension appeared to be that to afford too ample a scope to § 1343 (3) might be virtually, perhaps totally, to negate the jurisdictional amount requirement of § 1331; conversely, too ample a scope for § 1331 might excessively diminish, if not eliminate, access to the federal courts under § 1343(3) to vindicate rights or immunities in the absence of the minimum jurisdictional amount. Justice Stone was of the view that § 1343(3) "at least must be deemed to include suits in which the subject matter is one incapable of valuation." *Id.* at 530, 59 S.Ct. at 971. He apparently equated a right or immunity which is "one of personal liberty" with a right or immunity which is "one incapable of valuation." He concluded that only a suit to vindicate such a right or immunity "of personal liberty" should escape the requirement that the matter in controversy exceed the prescribed minimum sum or value.

Justice Stone was of the opinion that the rights and immunities asserted by the plaintiffs in *Hague* (freedom of speech and of assembly) were to be categorized as ones of "personal liberty, not dependent for [their] existence upon the infringement of property rights," *id.* at 531, 59 S.Ct. at 971, and that § 1343(3) granted jurisdiction over a claim of deprivation of such "personal liberty," without respect to the sum or value of the matter in controversy. The votes of Justice Stone, Chief Justice Hughes, and Justice Reed were necessary to the judgment of the Court that subject matter jurisdiction was present in the case. However, since the rights and immunities involved in the case were categorized by these three judges as ones of personal liberty, it was not necessary for them to decide that jurisdiction under § 1343(3) does *not* extend to claims of "infringement of property rights." Because Justice Stone's statements about § 1343(3) and the infringement of property rights

were dicta, and because they were made 32 years ago, they cast an uncertain light today.

Moreover, recent Supreme Court opinions sustaining jurisdiction under § 1343(3), without comment on distinctions between property rights and personal liberty, have cast grave doubt upon the current vitality of the line drawn by Justice Stone. Rosado v. Wyman, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) (asserted denial of equal protection in that payments to recipients of aid to families with dependent children in one county were less than those to recipients in another county)[3]; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (right to hearing prior to termination of public assistance payments); King v. Smith, 392 U.S. 309, 312, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) (denial of AFDC payments to the children of a mother who "cohabits" in or outside her home with any single or married able-bodied man). Money seems to have been at stake in each case. One must strain to say that the rights claimed in each of these three cases were rights of "personal liberty, not dependent for their existence upon the infringement of property rights."

The federal courts have found this distinction extremely elusive and difficult to apply. In Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), a landlord brought a civil rights action against the city district rent and rehabilitation director, challenging the constitutionality of the city rent control law. The Second Circuit adopted Justice Stone's analysis and held that the district court lacked jurisdiction under 28 U.S.C. § 1343(3). In Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970), tenants in public housing projects brought civil rights actions against the Housing Authority for violations of their rights to due process in eviction and penalty proceedings. The court upheld jurisdic-

---

3. The jurisdictional footing of this action is discussed in Kelly v. Wyman, 294 F. Supp. 887, 889–890 (S.D.N.Y.1968); a subsequent decision by a three-judge court in the same case, granting relief, 294 F.Supp. 893 (S.D.N.Y.1968), was affirmed by the Supreme Court, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.

tion under § 1343(3). *Id.* at 864–865. Without mentioning *Eisen,* the court held that the procedural due process claim brought the case within the scope of § 1343(3):

> "Unlike the cases cited which involved property rights (and incidental civil rights), the instant actions allege deprivations of procedural due process, a civil right, which may ultimately lead to the loss of a property right, to wit, tenancy in public housing projects." *Id.* at 864.

More recently an attack was made on a New York law which permitted the seizure of property in a replevin action prior to notice and hearing. Laprease v. Raymours Furniture Company, 315 F. Supp. 716 (N.D.N.Y.1970). Plaintiffs contended that the statute violated the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. A unanimous three-judge court upheld jurisdiction under § 1343(3), declared the statute unconstitutional, and enjoined its enforcement. In considering whether *Eisen* was controlling and defeated jurisdiction, the court categorized the Fourth Amendment claim as a right of "personal liberty," *id.* at 721, citing Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and observed that "jurisdiction would also appear proper on the due process contentions." *Laprease, supra,* at 721, citing *Escalera, supra,* 425 F.2d at 864, Dale v. Hahn, 440 F.2d 633 (2d Cir. 1971), involved an involuntary commitment to a mental hospital, and the control of plaintiff's property by a custodial committee. The plaintiff alleged that there had been an absence of procedural due process in the steps by which the committee obtained control of her property. The district court dismissed for lack of jurisdiction over this asserted violation of a property right,

but the court of appeals reversed, emphasizing the social stigma involved.

In Roberge v. Philbrook, 313 F.Supp. 608 (D.Vt.1970), certain features of a program of state aid to needy families with children were alleged to violate the equal protection clause of the Fourteenth Amendment and also to violate the Social Security Act. The court held that § 1343 (3) granted jurisdiction over the constitutional claim. It carefully reviewed the history of the question, noted the anomalies which have developed, acknowledged that "the gist of this claim * * * centers on a sum of money," at 613, but asserted that "welfare benefits are the staff of personal independence and security to those who receive them," at 615–616, and concluded that the plaintiffs' equal protection claim fell within § 1343(3), without regard to the amount in controversy.[4]

Prior to the cryptic holding last month in Ridley v. Nelson, *supra,* the treatment of this issue by the Court of Appeals for the Seventh Circuit had been rather indistinct.

In Ream v. Handley, 359 F.2d 728 (7th Cir. 1966), landowners brought an action for slander of title against former public officials who had publicly announced that the state had located a federal aid public highway over the plaintiffs' land, but who had not condemned plaintiffs' land. The court remarked that the controlling authority:

> "seems to hold that the civil rights statutes, of which § 1983 is one, do not confer jurisdiction where a person seeks only to protect property or monetary rights." *Id.* at 731.

But the court based its holding (that there was no cause of action under § 1983) on another ground:

> "In any event, plaintiffs have no action under § 1983, because said section

---

4. In National Land & Investment Company v. Specter, 428 F.2d 91 (3d Cir. 1970), there may be found another of the many examples of the judicial struggle to apply Mr. Justice Stone's distinction; the alleged right of a real estate developer not to suffer governmental interference allegedly resulting in the refusal of lenders to proceed with their financing commitments was held not to fall within § 1343(3).

creates a cause of action for only the violation of federal rights. This court in Ortega v. Ragen, 216 F.2d 561, 562 (1954), has observed that:

> 'A cause of action arises under this section only when a right created by the Federal Constitution or laws has been violated. Violation of a state law is not sufficient. \* \* \*'

"Thus, an action for slander of title or trespass is not a right created by the constitution or by any federal statute relied on by plaintiffs." *Id.*

Gray v. Morgan, 371 F.2d 172 (7th Cir. 1966), was an action for a declaratory judgment and injunction in which the federal constitutionality of certain Wisconsin income tax statutes was challenged as applied to nonresidents. Discussing the case as though only injunctive relief had been sought, the Court of Appeals held that 28 U.S.C. § 1341 (forbidding injunctions against the enforcement of state tax laws) was a bar. But the Court then proceeded to determine that § 1343(3) did not confer jurisdiction over the action, citing Hague v. C. I. O., *supra*, and Holt v. Indiana Manufacturing Company, 176 U.S. 68, 72, 20 S.Ct. 272, 44 L.Ed. 374 (1900), and observing, at 175 of 371 F.2d "Thus far, at least, it is quite clear that the courts have generally treated this statute [§ 1343(3)] as applicable to personal liberty rather than a property or monetary claim."

In McManigal v. Simon, 382 F.2d 408 (7th Cir. 1967), shareholder members of the Chicago Law Institute attempted to bring a shareholder's derivative suit under the Civil Rights Act.

> "In its essence plaintiff's complaint shows simply a dispute between some members of the Institute and its governing body, the executive committee, with respect to whether the corporation should donate its law library to the county, coupled with the claim of the plaintiff to a pecuniary interest in the current contract between the Institute and the County under which the books were housed in the County Court House and from which they have been removed to the new location of the courts in the Civic Center pursuant to the agreement for donation." *Id.* at 410.

After alluding to the dictum in Ream v. Handley, *supra*, 359 F.2d at 731 that "the civil rights statutes \* \* \* do not confer jurisdiction where a person seeks only to protect property or monetary rights," the court continued:

> "We perceive no allegation of injury to the plaintiff which is redressable in the federal right of action furnished by either § 1983 or § 1985 and therefore cognizable in the District Court by virtue of 28 U.S.C.A. § 1343. Consequently, the District Court did not err in dismissing the amended complaint. It was without jurisdiction." McManigal v. Simon, *supra*, 382 F.2d at 410.

Because the court treated the § 1983 and § 1985 claims together, I cannot read *McManigal* as adopting Mr. Justice Stone's analysis.[5] This is because there is explicit statutory authority for basing a § 1985 action upon damage to property.[6]

I would abandon the attempt to limit § 1343(3) to actions seeking to vindicate rights of "personal liberty, not dependent for [their] existence upon the infringement of property rights \* \* \*." Hague v. C. I. O., 307 U.S. 496, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423. I cannot understand why one should have recourse to a federal court to protect his "personal

---

5. The language "no allegation of injury \* \* \* redressable" indicates that the court may have been concerned with standing. Or, like *Ream*, *McManigal* might be read as holding that only a common law right, if any, as contrasted with a federal constitutional right was involved.

6. 28 U.S.C. § 1343(1) gives the district courts jurisdiction over any civil action: "[t]o recover damages for injury to his \* \* \* property \* \* \* by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42."

liberty" against arbitrary state action, but not to protect his "property rights" against arbitrary state action. To determine that welfare payments are "the staff of personal independence and security to those who receive them" Roberge v. Philbrook, *supra*, 313 F.Supp. at 615, but that financing commitments for a major real estate development are of little significance to an entrepreneur, National Land & Investment Company v. Specter, *supra*, or that $360 in cash is of little significance to a jailed prisoner, Ridley v. Nelson, *supra*, seems to reveal how impractical it is to decide that money or property is more important to this one than to that, and to permit the jurisdiction of the federal court to hinge upon such case-by-case analyses.

In the case now presented, it is alleged that state officers took money from the plaintiff's account without notice or hearing, judicial or administrative.[7] If this is true, it is difficult to see why the due process clause of the Fourteenth Amendment has not been violated. Defendants liken the situation to a dispute between two private parties, as, for example, the application by a bank of money from a depositor's checking account to a note owed the bank by the depositor. Thus, no constitutional issue is said to arise. But *it may fairly be inferred* from the amended complaint that the defendants were in a position to appropriate plaintiff's $40, if in fact they did so, only because his funds had come within their reach as officers of a state which is confining him against his will.

If I were free to do so, I would deny the motion to dismiss. But I am not free.

Accordingly, upon the basis of the entire record herein, it is ordered that the defendants' motion to dimiss for want of jurisdiction over the subject matter is hereby granted.

7. With respect to plaintiff's effort to obtain from prison administrators an explanation of the deduction, a certified copy of the following letter (dated Dec. 6, 1968) is appended to the complaint:
Mr. Francis Hyne
Associate Warden—Administration
Wisconsin State Prison
Box C
Waupun, Wisconsin
Dear Mr. Hyne:
Our cashier, Mr. Litscher, has received a letter from one of our former inmates, Michael German 12390-A, who is presently at your institution, regarding the

balance of his money in inmate accounts. Would you please advise Mr. German that he had a total balance of $60.60 upon his transfer to the Wisconsin State Prison. There were charges against him in the amount of $40.00 for the recovery of a stolen vehicle and the balance of $20.60 was forwarded to the Wisconsin State Prison on September 12, 1968.
I assume this would be a sufficient answer for Mr. German.
　　Yours very truly,
　　/s/ George L. Bille
　　George L. Bille
　　Associate Warden—Administration