Carlos A. GUAL et al., Plaintiffs,

v.

Federico Hernandez DENTON et al., Defendants.

Civ. No. 76–1655.

United States District Court,
D. Puerto Rico.

Aug. 22, 1979.

Salvador Antonetti, Santurce, P.R., for plaintiffs.

Roberto Armstrong, Jr., Dept. of Justice, San Juan, P.R., A. Manuel Martin, Luis R. Torres, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

On October 17, 1978, an evidentiary hearing was held before the United States Magistrate in the present cause of action requesting equitable relief and damages pursuant to Title 42, United States Code, Section 1983. The Court's jurisdiction was invoked pursuant to Title 28, United States Code, Sections 1331 and 1343 and also under the First, Fifth and Fourteenth Amendments to the United States Constitution.

At the hearing the plaintiffs alleged that the Price Control Regulation No. 22 as amended and approved by the Consumer Affairs Department (hereinafter D.A.C.O.) did not allow the plaintiffs to sell lard to distributors at a profit thereby forcing the plaintiffs out of their business. According to the plaintiffs the Price Regulation No. 22 as enforced by D.A.C.O. with regards to the plaintiffs was unconstitutional and discriminatory in that: (1) it deprived them of their property without due process of law through its unreasonable, arbitrary and discriminatory application; and, (2) plaintiffs were denied the equal protection of the law in that (a) the price regulation as applied discriminated between the puertorrican lard producers and the mainland manufacturers and (b) the regulation was discriminatorily applied to lard and the competing vegetable oil.

On May 18, 1978, this Court denied defendant's motion for summary judgment.

Therein a series of uncontested facts were listed. These were cited by the Magistrate in his recommendation and report and have not been objected to by the parties. We, therefore, adopt the same and make them part of this Opinion and Order. These read:

"1. Plaintiff Carlos A. Gual Sucrs., Inc., is a domestic corporation engaged in the business of the wholesale distribution of lard in Puerto Rico. Prior to January 1976, Carlos A. Gual operated the same business as a sole proprietorship.

2. (a) Defendant Federico Hernández Denton was, at all times relevant to this action and up to December 31, 1976, Secretary of the Department of Consumer Affairs of the Commonwealth of Puerto Rico.

(b) Defendant Carmen Pesquera de Busquets is currently Secretary of D.A.C.O.

3. Since 1911 and up to 1976 plaintiff or its predecessor in interest has been in the business of distributing lard in Puerto Rico. All during that time, plaintiff or its predecessor in interest have represented and distributed in Puerto Rico 'El Cochinito' brand lard, which brand has always been owned by Cudahy Foods Company, grantor of the distributorship. The relation between plaintiff or its predecessor in interest and Cudahy Foods Company has been a long and fruitful one. Plaintiffs have developed in Puerto Rico a healthy and prosperous marker for 'El Cochinito' brand lard to the point where it accounted for approximately 30% of the Puerto Rican lard market up to and including 1972.

4. Prior to 1961, plaintiffs imported lard already packaged from Cudahy Foods Company plants, principally in the Middle West of the United States.

5. Since 1961, there has been established in Puerto Rico a processor and packager of lard, Empacadora del Caribe, Inc., now Edelcar, Inc. Since the commencement of operations of Edelcar, Inc., in 1961, Cudahy Foods Company entered into an agreement with Edelcar by means of which Edelcar would process and pack the lard required by Cudahy Foods Company to be delivered to plaintiff for distribution.

6. Plaintiff's function in the market has always been that of a wholesale distributor; that is, plaintiff obtains lard from the processor and sells it exclusively to wholesalers and chain stores. This has been its function in the Puerto Rican market for over 60 years. Plaintiff's income and profits are derived from the commissions it receives from Cudahy Foods Company for distribution of the lard.

7. Plaintiffs annual gross income from distribution of lard averaged approximately $130,000 from the years 1965 and 1972.

8. In 1971, a regulation (Price Regulation No. 22) was promulgated by the Consumer Services Administrator which for the first time purported to regulate the price of lard, pursuant to Act No. 228 of May 12, 1942, and Act No. 148 of June 27, 1968. The then Director of the Consumer Services Administration declared lard an article of first necessity and issued Regulation No. 22.

9. On April 3, 1973, the then Director of the Consumer Services Administration, later Secretary of the Department of Consumer Affairs (D.A.C.O.), defendant Hernández Denton, issued Amendment No. 1 to Regulation No. 22.

10. On April 23, 1973, the Department of Consumer Affairs was created. This department assumed all of the powers and duties of the Consumer Services Administration. Defendant Hernández Denton was Secretary of said Department.

11. As a result of certain actions of D.A. C.O., plaintiffs began in August 1974 to request increases in the maximum price at which lard processed in Puerto Rico could be sold to wholesalers by plaintiff. Further requests were sent in October of 1974.

12. D.A.C.O. responded to these requests in a letter dated November 18, 1974, signed by the Under Secretary of D.A.C.O., Luis Morera.

13. On August 11, 1975, plaintiff Carlos A. Gual and Cudahy Foods Company were notified of an alleged violation of price control regulations for having refused to sell lard. Plaintiff refused to sell the lard. A hearing on the violation was held on October 28, 1975, and plaintiff raised the pertinent constitutional defenses. On June 9, 1977, after the complaint herein had been filed, plaintiff received a Resolution from D.A.C.O. stating that 'there exist reasons that justify relieving plaintiff of the imputed violation.'

14. On September 30, 1975 plaintiff met with D.A.C.O undersecretary Luis Morera to discuss plaintiffs requests. On or about October 8, 1975, at plaintiff's initiative, a meeting with Primo Delgado Zayas, a D.A. C.O. official, was held to discuss plaintiff's request. Although the content of the discussions and agreement reached at those meetings is in controversy, it is admitted that D.A.C.O. was informed that Edelcar, Inc. would not agree to a certain proposed solution (the substance of which is denied by defendant) unless it came as an order from D.A.C.O.

15. On November 18, 1975, plaintiffs filed a formal petition outlining its request and the conversations had with D.A.C.O. officials. A copy of this petition has been served with requests for admissions. A hearing on plaintiff's petition was held on February 27, 1976, during which no one opposed plaintiff's request.

16. An action for mandamus was filed by plaintiff on October 6, 1976, in the Superior Court of Puerto Rico. On October 15, 1976, defendant issued amendment number 2 to price regulation number 22. Said regulation, called for a reasonable profit margin for 'distributors'. Plaintiff was later informed by D.A.C.O officials, however, that his petition had been denied, because the official interpretation of the regulation was that the primary distributor mentioned in the statute was the manufacturer, Edelcar.

17. As of May 1976, Cudahy Foods Company decided to discontinue its lard business in Puerto Rico.

18. Prior to and during the acts complained of, Carlos A. Gual publicly and repeatedly criticized the policies of Federico Hernández Denton and D.A.C.O. in general as regards price regulations. These criticisms were made by Carlos A. Gual individ-

ually and as president of the Free Enterprise Association (Asociación Pro Defensa de la Libre Empresa) and have been published in newspapers of general circulation in Puerto Rico, specifically including the following, among others: El Nuevo Día, Wednesday, April 11, 1973, p. 3; The San Juan Star, April 13, 1973, pages 1 and 18; El Mundo, February 20, 1973; The San Juan Star, February 16, 1973; El Mundo, February 18, 1973; El Mundo, August 9, 1973; El Nuevo Día, November 8, 1973; El Imparcial, August 8, 1973.

19. The documents identified as Exhibits D, E, F, G, H, I, J and K to the report of Hjalmar Flax, hearing examiner for D.A.C.O. on plaintiff's petition, were not available at the time of the hearing."

The following additional fact was added by the Magistrate upon completion of the evidentiary hearing and has not been objected to by either of the parties: "Defendant's Hernández Denton's application of the above mentioned price control regulations to the plaintiffs was done in the proper exercise of the delegated police power bestowed upon him for the benefit of the consumers of Puerto Rico and was not done to intentionally injure the plaintiffs nor motivated by bad faith in retaliation against the plaintiff's exercise of their First Amendment rights." We likewise incorporate said finding and make it part of this Opinion and Order.

We have carefully examined and conducted our own independent research regarding the Magistrate's Recommended Conclusions of Law. These are in accordance with the applicable law. Hence, they are adopted and form a part of this decision and order. These state:

"It is well established that the Fifth and Fourteenth Amendments to the United States Constitution do not prohibit governmental regulation for the public welfare as long as said regulation is accomplished by methods consistent with due process of law. *Nebbia v. New York*, 291 U.S. 502 [54 S.Ct. 505, 78 L.Ed. 940]; *Addyston Pipe & Steel Co. v. U. S.*, 175 U.S. 211 [20 S.Ct. 96, 44 L.Ed. 136]; *Antonio Roig Sucrs. v. Sugar Board of Puerto Rico*, 235 F.2d 347 (C.A.1, 1956). As regards Due Process, the United States Supreme Court, in *Nebbia*, supra [291 U.S.] at p. 537, [54 S.Ct. 505], held that:

'So far as the requirement of due process is concerned . . . a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied . . . Price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy [of] the legislature'.

"As to whether statutory classifications are discriminatory, the case of *Dandridge v. Williams*, 397 U.S. 471 [90 S.Ct. 1153, 25 L.Ed.2d 491] held that:

'. . . it is enough that the State's action be rationally based and free from invidious discrimination . . .

'In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis" it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." . . . "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." '

"It should be noted that *Richardson v. Belcher*, 404 U.S. 78, at p. 81 [92 S.Ct. 254, 30 L.Ed.2d 231] held that "a classification that meets the test articulated in *Dandridge* is perforce consistent with Due Process requirements."

"The standards under which alleged Equal Protection Clause violations are to be

evaluated were declared in *McGowen [Mc-Gowan] v. Maryland*, 366 U.S. 420, at p. 425 [81 S.Ct. 1101, 6 L.Ed.2d 393] to be as follows:

'The Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.'

"To determine whether the application of Price Control Regulation No. 22 and its amendments were relevant to the achievement of the state's objective in this case, we must examine Sections 341b and 341e of Title 3, Puerto Rico Laws Annotated, pursuant to which the defendants base their application on said price controls to the plaintiffs. Section 341b states as follows: 'Purpose: The Department of Consumer Affairs shall have as its primary purpose to defend and implement the rights of the consumer, to restrain the inflationary trends as well as the establishment and inspection of a price control over the goods and services for use and consumption.' Section 341e(a) vested the Secretary of Consumer Affairs with the following powers:

'to regulate, fix, control, freeze, and review the prices, profit margins and yield rates of the capital invested at all marketing levels on the goods, products, and those services currently and traditionally rendered and charged for by the hour or per unit, which are offered or sold in Puerto Rico in those cases where such measures are justified to protect the consumer from unjustified raises in prices, to avoid the deterioration of the purchasing power of the consumer, and to protect the economy from inflationary pressures.'

"It would seem that the legislature could reasonably find that the price controls of lard in question are necessary to 'defend and implement the rights of the consumer and to restrain the inflationary trends.' Thus, because it cannot be said that the application of Regulation 22 and its amendments 'rest on grounds wholly irrelevant to the achievement of the state's objective', we must conclude that as a matter of law the application of said price control regulations to the plaintiffs do not violate either the Due Process or Equal Protection guarantees of the United States Constitution.

"We thus arrive at the plaintiffs' theory that the application of the price control regulations in question to them amounted to an intention and purposeful attempt to drive them out of business in retaliation for the exercise of their First Amendment rights.

"It is settled that in a Section 1983 action for money damages the plaintiffs have the obligation to sufficiently allege and prove that the defendant's conduct was either purposefully discriminatory, knowing or reckless, or willful. See: *Harrison v. Brooks*, 446 F.2d 404 (C.A.1, 1971); *Gaffney v. Silk* 488 F.2d 1248 (C.A.1, 1973); *Ortega Cabrera v. Municipality of Bayamón*, 562 F.2d 91 (C.A.1, 1977). As stated by the First Circuit in *Gaffney v. Silk*, supra, at p. 1251: 'It is the clear rule in this circuit that liability will attach only where "the defendants *subjectively* realized [that their action] would result in depriving the plaintiff of a right or privilege secured by the Constitution of the United States."' (Emphasis ours).

"Upon the evidence presented by the parties through documents and oral testimony the Court has found that the plaintiffs have not adequately rebutted the presumption of good· faith that attaches to official state action. Plaintiffs' evidence tended to show that he publicly criticized defendant Hernández Denton; that shortly thereafter Regulation No. 22 was put into effect; and that defendant Hernández Denton denied plaintiffs all administrative relief while at the same time granting favorable rulings to others.

"However, the fact that defendant Pesquera de Busquets' motivations are not at

issue is particularly damaging to plaintiffs' case in that she studied the regulations in question here, as the result of a stipulation between the department and the plaintiffs which was entered into on April 6, 1977, and no change in the price control policy set forth in the Price Regulations for Lard, as amended, was effectuated. Moreover, one of the findings in the examiner's report to Amendment No. 2, dated October 7, 1976, is that if the plaintiffs' requests are granted, the market price of lard will increase immediately without any benefit accruing to the consumer. The examiner, Hjalmar Flax, Chief of the Regulation Unit of D.A.C.O. (Jefe Unidad de Reglamentación), specifically recommended in his report that "the control of prices over lard be maintained in view of the economic concentration that exists in this article of primary necessity."

WHEREFORE, for the above stated reasons, this Court finds that plaintiffs constitutional and civil rights have not been violated by defendants' actions nor by the application of the Price Control Regulation No. 22 to plaintiffs in their former business of selling lard to distributors in Puerto Rico. The Clerk shall enter judgment accordingly. IT IS SO ORDERED.