TREDWELL A. HARRISON & another *vs.* BUILDING
INSPECTOR OF BRAINTREE & another.

Norfolk.    February 10, 1966. — April 7, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Zoning,* Construction of by-law or ordinance, Access road, Isolated area,
Enforcement of zoning.    *Mandamus.*

A neighbor of a parcel of land in a town was entitled to seek by mandamus against the enforcing officer of the town's zoning by-law enforcement thereof against a use of the parcel allegedly violative of the by-law. [561]

After an amendment of a town's zoning by-law changing from a residential district to an industrial district a large parcel of land bounded on all its four sides by streets and providing that "the zoning change [is] to be effective in each case from a distance of 200 feet setback from the street lines," thereby establishing an industrial district entirely surrounded by residential strips 200 feet wide along the streets, construction and use of roadways across one of such strips for access to and egress from a factory built on the industrial land was not permitted by implication and must be held to violate the residential zoning of the strip. [562–563]

PETITION for a writ of mandamus filed in the Superior Court on February 9, 1965.

The petitioners appealed from orders by *Pillsbury,* J., sustaining demurrers of the respondents, and from an order by *Good,* J., denying a motion by the petitioners to amend the petition.

*Douglas A. Randall* for the petitioners.

*Richard A. Hunt* for the respondent Building Inspector of Braintree.

*Ronald H. Kessel* (*Kevin Hern* with him) for the respondent Textron Industries, Inc.

WHITTEMORE, J. The petitioners seek an order in mandamus for the enforcement of the zoning by-law of Braintree. Demurrers of the building inspector and Textron Industries, Inc. were sustained and a motion to amend the petition was denied. The petitioners' appeal brings before us the issue whether an owner of land in an industrial district may use lots of land in an adjacent residential zone as access roadways for its industrial plant.

The petition alleges, or by attached maps shows, as follows: The petitioners own a house on the southerly side of West Street. Until 1954, this lot and a large tract of adjacent land were zoned for residential use. In 1954 an amendment in respect of the entire tract was adopted in these terms: "That Par. 1, Section 1 of the Zoning By-Law be amended so that the Zoning Map dated May 2, 1940, as most previously amended, be changed to provide that the following described area be changed from Residence A District to Industrial District: A parcel of land bounded by West Street on the north side, Granite Street on the east side, King Hill Road on the south side and an unnamed street running from West Street to King Hill Road on the west side, said parcel containing approximately 340 acres more or less and the zoning change to be effective in each case from a distance of 200 feet setback from the street lines." Conforming to this amendment the zoning map shows in the interior of the 340 acre parcel an industrial district entirely surrounded by a residential strip (either in Residence A or B zones) 200 feet wide adjacent to each street.

The petitioners purchased their lot in June, 1963. The respondent Textron Industries, Inc. (Textron) in January, 1964, "purchased a large tract of land to the rear of and [extending to West Street] at both sides of the petitioners' property." Textron immediately began the construction of a large factory and the contractor used Textron's land on either side of the petitioners' land for access roads. It appearing that such use might become permanent, the petitioners protested in August, 1964. Upon written assur-

ance by attorneys representing Textron and its subsidiary that the roadways "will not produce a detrimental effect upon the petitioners' property, the petitioners suffered the completion of the construction of the driveways." On September 2, 1964, at a conference with officials of Textron's subsidiary and Textron's attorney, the petitioners and their attorney protested the construction of the driveways and requested their relocation. Factory operations on two shifts began about November 22, 1964. Several hundred employees and the necessary trucks carrying material and manufactured products used the driveways. On December 19, 1964, the petitioners, by their attorney, protested to the building inspector and requested that he act to prevent violations of the by-law. The building inspector has not replied. Since January, 1965, according to the proposed amendment to the petition, the factory has operated around the clock on three shifts employing over 400 persons all of whom use the driveways.

There is no doubt of the right of the petitioners to bring a petition for a writ of mandamus. *Brady* v. *Board of Appeals of Westport,* 348 Mass. 515, 520–522. The demurrers of course raise no issue of discretionary refusal of the writ. We note that the facts alleged suggest no basis therefor.

The use of land in a residential district, in which all aspects of industry are barred, for access roadways for an adjacent industrial plant violates the residential requirement. *Brookline* v. *Co-Ray Realty Co. Inc.* 326 Mass. 206, 211–212 (rear yard for, and pedestrian entrance to, apartment house). *Great Neck Estates* v. *Bemak & Lehman, Inc.* 223 App. Div. (N. Y.) 853, reversing 128 Misc. (N. Y.) 441; affd. 248 N. Y. 651. *Yonkers* v. *Rentways, Inc.* 304 N. Y. 499. *Wolf* v. *Zoning Bd. of Adjustment of Park Ridge,* 79 N. J. Super. 546, 550. See *Cary* v. *Board of Appeals of Worcester,* 340 Mass. 748 (invalid variance for parking for business extending into residential zone).

The respondents contend, however, that the 1954 amendment did not zone the 200 foot strip exclusively for residen-

tial use.   They suggest that means of access over the residential strip was necessarily implicit in the scheme of completely surrounding the industrial area with the residential strip.   They point out that without access across the strip the interior land can be used for neither of the principal purposes intended for an industrial district (industry and business) and, indeed, that most private uses of any kind will be barred inasmuch as dwellings are barred in an industrial district.[1]

The respondents thus present a proposition on which we need not rule: that the 1954 amendment, applied according to its terms, effected an unreasonable classification.[2]   This, we hold, would not justify modifying by construction the express terms of the amendment as applied to the residential strip.   There is no basis in the statute or in the nature of zoning for adding uses by implication to one zone to make reasonable the classification of another zone.  The continued classification of the strip as residential appears reasonable for the land included therein.   In any event the classification of permitted land use must be express and reasonably certain.[3]   See O'Connell v. Brockton Bd. of Appeals, 344 Mass. 208, 212.

The amendment is unusual in form in that it begins by describing as in the new industrial zone the entire tract inclusive of the 200 foot strip.   But the qualifying language is express: "the zoning change to be effective in each case from a distance of 200 feet setback from the

---

[1] By § V (2) the by-law permits in any industrial zone specified industrial and manufacturing uses and "Any uses permitted in Residence A, B, C or Business District except no building shall be erected to be used as a dwelling." In Residence A and B districts, in addition to dwellings, the by-law permits private clubs, churches, educational use, agricultural use (as described), municipal recreational use and garages of limited size.

[2] The petition does not enable us to give significance to five roadways shown on the zoning map as extending short distances into the tract near its southerly corner and near the intersection of Granite Street and King Hill Road. Whether these are private ways for limited access does not appear.   The issue is not presented whether access into the tract over these short ways would be an answer to the contention of unreasonable classification.

[3] If the amendment was invalid because of unreasonable classification, it appears that the strip as well as the interior of the tract would remain residential.

street lines.'' This appears a convenient and precise way of stating that a strip 200 feet wide parallel to the street lines is unaffected by the amendment and remains in the residential zone. This language was in no sense the equivalent of establishing a building line for a new industrial zone inclusive of the 200 foot strip. The amendment could only have been understood by anyone interested in the classification of land in the strip as leaving that land in the residential zone. It was entirely inadequate to create a new undescribed zone having some aspects of a residential zone and some aspects of an industrial zone.

The orders sustaining the demurrers and denying the motion to amend are reversed. The amendment to the petition is to be allowed. The petitioners may, if they deem it advisable, move to add as a respondent the Board of Trustees of the International Brotherhood of Electrical Workers, alleged in the petition to have bought the factory building and some of Textron's land. If, the facts being established, it shall appear that relief is required, neither the writ of mandamus nor any order for compliance shall issue prior to June 30, 1966, to give an opportunity for orderly municipal action in respect of providing legal access to land in the industrial zone, if the town shall determine thereon.

*So ordered.*