**Tredwell A. HARRISON**
and
**M. Gale Harrison, Plaintiffs, Appellants,**
v.
**William G. BROOKS et al., Defendants, Appellees.**

**No. 71–1055.**

United States Court of Appeals, First Circuit.

Heard June 7, 1971.

Decided July 27, 1971.

Edward T. Dangel, III, Boston, Mass., with whom Douglas A. Randell, and Edward M. Dangel, Boston, Mass., were on brief, for appellants.

Jacob J. Locke, Boston, Mass., with whom Ficksman & Conley, Boston, Mass., was on brief, for Richard A. Hunt, appellee.

Dace J. Moore, Boston, Mass., Town Counsel of Braintree, for William G. Brooks, Daniel A. Maloney, and Joseph M. Magaldi, appellees.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Tredwell A. Harrison and his wife Gale of the Town of Braintree, Massachusetts, brought this civil rights action against certain officials of said town [1] for damages caused by the failure of said officials to enforce the zoning by-laws of the town and for conspiring to protect and prefer the interests of Textron Industries, Inc., which had a factory there, over the legal rights of the plaintiffs. The suit was brought under 42 U.S.C. §§ 1983 and 1985. Jurisdiction is said to be founded on 28 U.S.C. §§ 1331 and 1343. The district court dismissed the case for want of jurisdiction and denied plaintiffs' motion to amend the complaint. This appeal followed.

The complaint is in ten counts. In the first four, brought solely under § 1983, Harrison alleges certain "wrongful" and "unlawful" activity on the part of each of the four named defendants which he claims resulted in damage to him. In Counts V through VIII, also brought under § 1983 alone, his wife alleges the same "wrongful" and "unlawful" activity by reason of which she claims she also was damaged. Count IX, brought under §§ 1983 and 1985, alleges a conspiracy against Harrison by the defendants and others not named, and Count X alleges a similar conspiracy against his wife.

The allegations set forth in the complaint are substantially as follows. Plaintiffs and their children have resided in their family home in Braintree since June 1963. The house is located in a residentially zoned area. In January 1964 Textron purchased a thirty-five acre tract located on both sides and in the rear of plaintiffs' home and constructed a factory in the rear. Driveways to and from the factory extended across the residentially zoned area on both sides of plaintiffs' home and were used daily by several hundred people, as well as by trucks going to and from the factory. Plaintiffs brought a mandamus proceeding against the building inspector in the state court to compel him to enforce the zoning by-law and thus prevent the aforesaid use of said residentially zoned land for driveways to and from the factory. When the case reached the Supreme Judicial Court on demurrer the court held that, if the facts alleged by the plaintiffs were established, the driveways in question violated the Braintree Zoning By-Laws, but the court ordered that neither the writ nor any compliance order issue prior to June 30, 1966, in order "to give an opportunity for orderly municipal action in respect of providing legal access to land in the industrial zone." Harrison v. Building Inspector of Braintree, 350 Mass. 559, 563, 215 N.E.2d 773, 776 (1966).

Plaintiffs further allege in Counts IX and X that after this decision the defendants, acting under color of state law, conspired among themselves and with others for the purpose of depriving plaintiffs of their right to equal protection of the law by persuading the Braintree planning board to recommend and the town meeting to adopt an unconstitutional and invalid by-law to permit the continued use of said driveways.[2] Plaintiffs successfully attacked this new

---

1. Named as defendants were the Chairman of the Industrial and Business Development Commission, the Inspector of Buildings, the former attorney for the town, and the Chairman of the Planning Board.

2. The driveways have been abandoned, closed and grassed over since sometime in 1969 or 1970.

by-law. On appeal from the Land Court, the Supreme Judicial Court ruled that "the use for industrial access \* \* \* of strips of residentially zoned land on both sides of [plaintiffs'] property is unreasonable as a matter of law." Harrison v. Town of Braintree, 355 Mass. 651, 656, 247 N.E.2d 356, 360 (1969).

The district court dismissed the complaint on two grounds: (1) that there was no statutory basis of jurisdiction for the § 1983 action under 28 U.S.C. § 1343(3) since the rights asserted by the plaintiffs depend for their existence upon the infringement of property rights, citing Eisen v. Eastman, 421 F. 2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); and (2) that, because statutory authority is a prerequisite for a federal cause of action for damages, jurisdiction cannot be founded solely on the violation of a constitutional right and federal question jurisdiction of 28 U.S.C. § 1331. Bivens v. Six Unknown Named Agents, 409 F.2d 718, 720 (2d Cir. 1969), which was reversed subsequent to the district court's decision, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (U.S. June 21, 1971). In this opinion we shall consider the jurisdictional adequacy of § 1343, but because of our decision we need not reach the question of whether the Supreme Court's decision in *Bivens, supra,* applies to this case.

■■ We affirm the district court's dismissal of the first eight counts because they do no more than allege "wrongful" conduct by the defendants. Where a state official's judgment and discretion are of vital concern, we require a showing of purposeful discrimination or at least an allegation that his misdeeds were knowing or reckless. *See* City of Boston v. Massachusetts Port Authority, 444 F.2d 167 (1st Cir., 1971). *Compare* Madison v. Manter, 441 F.2d 537 (1st Cir. 1971), and Kelley v. Dunne, 344 F.2d 129, 133 (1st Cir. 1965), *with* Whirl v. Kern, 407 F.2d 781 (5th Cir.), cert. denied, 396 U.S.

901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). There is a vast difference between alleging an act to be merely "wrongful" or "unlawful" and the "'showing of purposeful discrimination' \* \* \* necessary in order to raise a claim under the Fourteenth Amendment." City of Boston v. Massachusetts Port Authority, *supra* at 169; *see* Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1943). Although the allegations in the first eight counts are deficient under this test, we think Counts IX and X *have* sufficiently alleged "purposeful discrimination." We therefore move to a closer consideration of those two counts.

■ Because of the focus of argument by both parties, the district court confined its attention to the scope of § 1343(3), the jurisdictional basis for a civil rights action under 42 U.S.C. § 1983. But in Counts IX and X of their complaint plaintiffs also relied on § 1985(3), which creates a cause of action "[i]f two or more persons in any State or Territory conspire \* \* \* for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. \* \* \*" Plaintiffs' allegations of a conspiracy to deprive them of equal protection of the local zoning laws constitute a valid cause of action under § 1985(3).

■ Since plaintiffs have alleged more than $10,000 in damages, they could bring this case as a civil action arising under the laws of the United States. 28 U.S.C. § 1331. The federal courts also have jurisdiction under 28 U.S.C. § 1343(1), which provides for jurisdiction over any civil action brought by any person:

> "To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42."

Section 1343(1) presents none of the problems raised in Eisen v. Eastman, *supra*, regarding § 1343(3) jurisdiction, because both § 1343(1) and § 1985 clearly contemplate actions involving property rights.

Furthermore, we think there is arguable jurisdiction in this case under § 1343(3), even under the interpretation of that provision outlined in Eisen v. Eastman, *supra*. That case, which involved a constitutional challenge to the New York City rent control laws, held that, generally speaking, § 1343(3) grants jurisdiction in § 1983 actions involving "personal rights" but not in those involving "property rights." This "civil rights-property rights" distinction is derived from the concurring opinion of Mr. Justice Stone in Hague v. C. I. O., 307 U.S. 496, 518–532, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), who concluded that § 1343(3) grants jurisdiction "whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights." *Id.* at 531, 59 S.Ct. at 971. A strict reading of this rule would deny § 1343(3) jurisdiction in the instant case since the civil right, *i. e.*, unequal application of the zoning law, is, in a sense, dependent on a property right, ownership of land in Braintree.

Although this court has held that it had jurisdiction under § 1343(3) in at least one "property rights" case, Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953), it has never had occasion directly to confront the "civil rights-property rights" distinction. Nor has the distinction ever been expressly applied by the Supreme Court; however, the Court has affirmed, per curiam, cases in which lower courts have applied it.[3] The "civil rights-property rights" distinction has been adopted by three circuits,[4] in addition to the Second, and has not been rejected by any federal appellate court that has considered it.

As Judge Friendly pointed out in *Eisen, supra*, this distinction is easy to apply in pure property cases (*e. g.*, tax cases), on the one hand, or in pure personal rights cases (*e. g.*, free speech), on the other. But

> "[g]reater difficulty has been experienced with cases involving denials or revocations of licenses or discharges

---

3. Hornbeak v. Hamm, 283 F.Supp. 549 (M.D.Ala.), aff'd per curiam, 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968); Alterman Transport Lines, Inc. v. Public Service Comm'n of Tennessee, 259 F. Supp. 486 (M.D.Tenn.1966), aff'd per curiam, 386 U.S. 262, 87 S.Ct. 1023, 18 L.Ed.2d 39 (1967); Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo. 1962), aff'd per curiam, 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963). All three of these cases involved tax statutes, and none involved an allegation of "purposeful discrimination" against the individual or class to which he belonged. None is inconsistent with the recognition by the court in *Abernathy* "that the arbitrary exclusion of a person rightfully belonging to a class of persons legally immune from state taxation is a denial of the 'equal protection' clause of the Fourteenth Amendment." *Supra*, 208 F.Supp. at 795. *See* Snowden v. Hughes, *supra*, 321 U.S. at 9–10, 64 S. Ct. 397. *See also* Pyeatte v. Board of Regents, 102 F.Supp. 407 (W.D.Okla. 1951), aff'd per curiam, 342 U.S. 936, 72 S.Ct. 567, 96 L.Ed. 696 (1952) (case involving interference with boarding house business; distinction not mentioned).

4. National Land & Investment Co. v. Specter, 428 F.2d 91 (3d Cir. 1970); Howard v. Higgins, 379 F.2d 227 (10th Cir. 1967); Ream v. Handley, 359 F.2d 728 (7th Cir. 1966). The position of the Fifth Circuit is unclear. The distinction was applied in Bussie v. Long, 383 F.2d 766 (5th Cir. 1967). But the court took the position in Atlanta Bowling Center, Inc. v. Allen, 389 F.2d 713, 715 n. 9 (5th Cir. 1968), that the circuit has not expressly adopted it since all prior cases satisfied the § 1331 $10,000 jurisdictional amount requirement. *See generally* H. Hart & H. Wechsler, The Federal Courts and the Federal System 840–842 (1953); Note, Section 1343 of Title 28—Is the Application of the "Civil Rights-Property Rights" Distinction to Deny Jurisdiction Still Viable?, 49 B.U. L.Rev. 377 (1969); Note, The Proper Scope of The Civil Rights Act, 66 Harv. L.Rev. 1285 (1953); Note, The "Property Rights" Exception to Civil Rights Jurisdiction—Confusion Compounded, 43 N.Y.U.L.Rev. 1208 (1969).

from public employment. These can be viewed about equally well as complaining of a deprivation of the personal liberty to pursue a calling of one's choice or of the profits or emoluments deriving therefrom." *Supra,* 421 F.2d at 565.

*Eisen* itself did not resolve this problem since the plaintiff in that case alleged no purposeful discrimination, "only the loss of money." *Id.* at 566. A review of subsequent Second Circuit cases, however, seems to suggest that, where there are overtones of a deprivation of a substantial personal right mixed with a deprivation of property rights, the court *will* take jurisdiction under § 1343(3). *See* Johnson v. Harder, 438 F.2d 7 (2d Cir. 1971) (rights to welfare payments);[5] Taylor v. New York City Transit Authority, 433 F.2d 665 (2d Cir. 1970) (dismissal from civil service employment); Gold v. Lomenzo, 425 F.2d 959 (2d Cir. 1970) (revocation of a real estate broker's license) (Friendly, J.).[6] *See also* Tichon v. Harder, 438 F.2d 1396, at 1400 (2d Cir. 1971) (dismissal from public employment without impact on reputation *not* a "personal" right).

We note further that *Eisen* cited with apparent approval the case of Burt v. City of New York, 156 F.2d 791 (2d Cir. 1946), a case not unlike the instant one. In *Burt,* the court took §

1343(3) jurisdiction in "an architect's damage action against city building officials for purposeful discrimination in rejecting his applications or imposing upon him unlawful conditions while not doing so to others." *Eisen, supra,* 421 F.2d at 565. Similarly, in National Land & Development Co. v. Specter, note 4 *supra,* the Third Circuit emphasized that "an allegation of a personal vendetta by an elected public official to stifle his political opponents by injuring their business enterprises" *would* state a claim for which there would be § 1343(3) jurisdiction. *Id.,* 428 F.2d at 100. And in Willis v. Reddin, 418 F.2d 702 (9th Cir. 1969), the court distinguished Howard v..Higgins, note 4 *supra,* on the ground that *Willis* involved "something more than money," namely, an attempt to deprive the plaintiff of his right to bail.

Counts IX and X in the instant case allege a conspiracy to deprive plaintiffs of their personal rights to have the law applied evenly to them by local town officials. We conclude that the allegations in Counts IX and X are sufficient for the court to take jurisdiction under 28 U.S.C. § 1343(1), the jurisdictional counterpart of 42 U.S.C. § 1985(3). We also conclude that it is very possible that even under *Eisen* the court would have jurisdiction under § 1343(3) as well.

Reversed and remanded for proceedings not inconsistent with this opinion.

---

5. *Eisen* recognized that the denial of welfare payments may constitute a deprivation of a personal right in the sense that the denial of these payments infringes on the "liberty" of children "to grow up with financial aid for their subsistence." *Supra,* 421 F.2d at 564. *See* Roberge v. Philbrook, 313 F.Supp. 608 (D.Vt.1970). *Roberge* noted that "[b]orderline cases * * * seem to indicate that when elements of both property rights and personal rights can be found, section 1343 (3) will support jurisdiction." *Id.* at 612.

6. The results of these cases are consistent with Mr. Justice Stone's formulation of

the "civil rights-property rights" distinction in *Hague, supra.* Justice Stone emphasized that in Holt v. Indiana Mfg. Co., 176 U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374 (1900), a suit to restrain alleged unconstitutional taxation of patent rights, jurisdiction was denied because there was no deprivation of civil rights. But in Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915), jurisdiction was taken under the predecessor of § 1343(3) to restrain enforcement of a state statute said to discriminate "against aliens in their right to seek and retain employment." *Hague, supra,* 307 U.S. at 530–531, 59 S.Ct. at 971.