RAYMOND E. BEALE, JR., trustee,[1] & another[2] *vs.* PLANNING
BOARD OF ROCKLAND & another.[3]

Suffolk. September 4, 1996. - November 7, 1996.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Zoning,* By-law, Commercial. *Subdivision Control,* Access ways, Decision
of planning board.

In an action brought in the Land Court seeking review of a decision of a
planning board denying an application for approval of a definitive
subdivision plan, the judge correctly concluded that the proposed use of
the land in question to provide access to a proposed retail shopping mall
on adjacent land in another town was not an allowable use in the district
and would violate the zoning by-law [693-694] and he correctly
concluded that the planning board's authority under G. L. c. 41, § 81M,
to enforce the zoning by-laws, provided a basis for the disapproval of
the subdivision plan [694-697].

A planning board did not act in excess of its authority in denying an ap-
plication for approval of a definitive subdivision plan by applying its
zoning by-law to a portion of the property in question that lay within
the boundary of the municipality [697-698], nor did the planning board's
decision deny access to the land or impose a substantial hardship
[698-701]; further the board was not required by any language in G. L.
c. 41, § 81M, to approve a plan that would result in a violation of the
zoning by-law order to meet an asserted need for access to the parcel
[701].

CIVIL ACTION commenced in the Land Court Department
on September 1, 1992.

The case was heard by *Peter W. Kilborn,* J.

The Supreme Judicial Court granted an application for
direct appellate review.

*Michael C. Gilleran (Henry S. Levin* with him) for the
plaintiffs.

[1]Of Hingham Executive Park Trust.

[2]WHBB Real Estate Limited Partnership.

[3]The board of health of Rockland. Although the board of health is a
party to the action, the only issues raised on appeal concern the decision
made by the planning board of Rockland.

*June S. Riddle* for the defendants.

GREANEY, J. We granted the plaintiffs' application for direct appellate review on this appeal from a judgment of the Land Court. The judgment (entered after a de novo evidentiary hearing, see G. L. c. 41, § 81BB [1994 ed.]), upheld a decision of the planning board of Rockland (planning board) denying an application for approval of a definitive subdivision plan that would extend an existing road in the town of Rockland into the town of Hingham to provide access for a proposed retail shopping center there. The land that is the subject of the plan straddles the town line dividing Hingham and Rockland. Almost the entire parcel, and all of the portion that is proposed to be used for the retail shopping center, lies in Hingham. The planning board concluded that, as to the land in Rockland, retail shopping center use would violate the use requirements of the applicable zoning district under the Rockland zoning by-law. The judge decided that the planning board had acted within its authority in disapproving the application on this basis. We agree with the judge and affirm the judgment.

The following facts are taken from the judge's decision with the addition of a few uncontested facts from the record. The plaintiff at the trial, Raymond E. Beale, Jr. (Beale),[4] owns a fifty-six acre parcel of undeveloped land. Most of the land lies in Hingham; a small portion of the land, at its southern corner, lies in Rockland. The Rockland portion includes a strip about 400 feet long, which runs roughly eastward from the border between Hingham and Rockland to an existing cul-de-sac at the end of Commerce Road. Commerce Road, a private way, is part of an approved subdivision and connects at its eastern end with Hingham Street, a public way.

Beale hopes to construct a 457,000 square foot retail shopping center on the portion of the land in Hingham; that portion lies in an "Industrial Park" zoning district. Beale asserts that the Hingham zoning by-law allows the shopping center use planned for that parcel. The 400-foot strip of land in Rockland would be used for an access road connecting the

---

[4]The other plaintiff on appeal, WHBB Real Estate Limited Partnership, was allowed to join as a plaintiff after the decision was entered. The Land Court judge denied this plaintiff's motion to be substituted for Beale as the sole plaintiff.

Hingham land to Commerce Road in Rockland, thereby providing access to the retail shopping center from Hingham Street in Rockland. The Rockland strip is in an "Industrial Park I-2" district. The Rockland zoning by-law does not allow retail sales generally in the I-2 district, although "wholesale and retail distribution centers" are permitted, and some retail businesses currently operate in Rockland within that I-2 district.

In the fall of 1991, Beale filed a preliminary subdivision plan with the planning board and the board of health, seeking approval for the extension of Commerce Road along the strip of land in Rockland to the Hingham town line. Both boards disapproved the plan in December, 1991.

Beale thereafter filed a definitive subdivision plan with the two Rockland boards, again seeking approval to extend Commerce Road. This application stated Beale's intention to continue the proposed road through Hingham so as to create a through road called "Commerce Road Extension." This through road would start at Commerce Road in Rockland and run westward across the strip of land in Rockland for which subdivision approval was sought to the town border of Hingham and Rockland. From there, it would continue in Hingham through the southern part of the land and then run northwesterly across land owned by South Shore Industrial Park Corporation to a cul-de-sac at the easterly end of Commerce Road in Hingham, a road which is connected (by way of Industrial Park Road) to Derby Street, a public way. Beale's application invited the planning board to make its approval of the definitive plan conditional upon the Hingham planning board's approval of the Hingham portion of Commerce Road Extension.

The definitive subdivision plan was rejected by the board of health (on June 30, 1992) and the planning board (on August 13, 1992). The planning board gave five reasons for denying the plan, one of which was that "[t]he proposed use of Commerce Road Extension (a private way) to provide access to a retail shopping center in the Town of Hingham violates the zoning regulations for Industrial-2 districts under [the applicable provision] of the Rockland Zoning By-Law wherein retail uses are prohibited."

Over a year later (in September, 1993), the Hingham planning board approved, with conditions, the Hingham portion

of Commerce Road Extension. One of the conditions was that no occupancy permit would be issued in Hingham until the road was connected, by way of Commerce Road in Rockland, to Hingham Street in Rockland.

Beale appealed from the decision of the Rockland planning board to the Land Court. After trial, the judge rejected four of the reasons given by the planning board for its action. (These reasons are no longer in issue.) The judge decided, however, that the planning board acted properly when it disapproved the subdivision plan for the access parcel in Rockland because the proposed use of that land would violate the use requirements of the Rockland zoning by-law. In reaching this conclusion, the judge determined that: (1) retail use of the type proposed for the Hingham land was prohibited in the "Industrial Park I-2" zone in Rockland, within which the access land was located; (2) access for a prohibited use is also prohibited, so that use of the parcel in Rockland for access to a retail shopping center in Hingham would violate the use requirements of the Rockland zoning by-law; and (3) the board had the authority, under the subdivision control law, G. L. c. 41, §§ 81K-81GG (1994 ed.), to disapprove Beale's plan because of this zoning violation, even in the absence of any express provision in the planning board's subdivision rules and regulations requiring compliance with the zoning by-law. We agree with the judge's determinations.

1. The judge correctly interpreted the Rockland zoning by-law as prohibiting retail uses in the I-2 zone, based upon the absence of such uses from the list of permitted uses in the zone and the express allowance of such uses in Rockland's business zoning districts. As the judge noted, large retail outlets, such as those identified by Beale as potential tenants for the shopping center,[5] would not meet the definition of a "retail distribution center," which is an allowable use in the I-2 district.[6]

2. The judge also correctly ruled that, if the Rockland land

---

[5]Among potential tenants identified by Beale in his testimony at trial were Home Depot, Home Quarters, Costco, K-Mart, and Walmart.

[6]At trial, Beale argued that the retail uses proposed for the shopping center would in fact be allowable uses within Rockland's I-2 district. Beale has not pressed this argument on appeal, beyond indicating that a number of nonconforming retail businesses are located in the I-2 district. As the judge noted in his decision, these uses may have been the result of prior nonconforming uses or variances.

is used for the purpose intended here, that is to provide access to a retail site of the type planned by Beale, the land itself would be in retail use, in violation of the use requirements of the Rockland zoning by-law. Use of land in one zoning district for an access road to another zoning district is prohibited where the road would provide access to uses that would themselves be barred if they had been located in the first zoning district. In such a situation, the access is considered to be in the same use as the parcel to which the access leads. See *Richardson* v. *Zoning Bd. of Appeals of Framingham*, 351 Mass. 375, 381 (1966) (access road to apartment house not permitted in single-residence district); *Harrison* v. *Building Inspector of Braintree*, 350 Mass. 559, 561 (1966) (access roadway to industrial district violated zoning requirements governing surrounding residential district); *Brookline* v. *Co-Ray Realty Co.*, 326 Mass. 206, 211-212 (1950) (lot in single-family zone may not be used for walkway to apartment building on another lot); *Building Inspector of Dennis* v. *Harney*, 2 Mass. App. Ct. 584, 585-586 (1974) (roadway to commercially zoned property is not a permitted use in a residential zone).

Beale argues that a distinction should be made between a case involving an access way across residential land, and the present case, in which an access road to serve retail uses would run across land in an industrial zone. Such a distinction is not warranted because the same rule governs both cases. See *Dupont* v. *Dracut*, 41 Mass. App. Ct. 293, 295-296 (1996) (town may prohibit use of part of lot located in a business zone for access to, and parking for, housing project on rest of lot that is zoned for multifamily use in neighboring community). This conclusion stems from the basic principle that "ordinarily, a municipality ought to be accorded the right to carry out the policies underlying its zoning ordinance or by-law with respect to the actual uses made of land within its borders." *Burlington Sand & Gravel, Inc.* v. *Harvard*, 26 Mass. App. Ct. 436, 439 (1988).

3. Having decided that the proposed use of the land in Rockland would violate the use requirements of the Rockland zoning by-law, the judge concluded that the planning board had the authority to disapprove the plan on the basis of the zoning violation, even though the planning board's rules and regulations did not contain a specific provision requiring

compliance with the zoning by-law. Beale challenges this conclusion, arguing that the language of G. L. c. 41, § 81U (1994 ed.), allows a planning board to disapprove a plan only when that plan fails to comply with the board's own rules and regulations or with the recommendations of the health board or officer.[7] Section 81U, however, must be read in conjunction with other provisions of the subdivision control law, most notably § 81M, which states the purposes of the law. Section 81M provides in part that, "the powers of a planning board . . . shall be exercised with due regard for . . . insuring compliance with the applicable zoning ordinances or by-laws." This statement of purpose provides a basis for disapproval of a subdivision plan separate from any noncompliance with a planning board's subdivision rules and regulations or a board of health's recommendations. See *Doliner* v. *Planning Bd. of Millis*, 343 Mass. 1, 6 (1961) ("The subdivision control law contemplates that the planning board shall ensure compliance of subdivision plans *not only with* the zoning by-law, but *also with* the [subdivision] rules and regulations . . . ." [emphasis added])[8]; *Baker* v. *Planning Bd. of Framingham*, 353 Mass. 141, 144-145 (1967) (planning board

---

[7] Section 81U provides in pertinent part as follows:

"After the hearing required by section eighty-one T and after the report of said health board or officer or lapse of forty-five days without such report, the planning board shall approve, or, if such plan does not comply with the subdivision control law or the rules and regulations of the planning board or the recommendations of the health board or officer, shall modify and approve or shall disapprove such plan. In the event of disapproval, the planning board shall state in detail wherein the plan does not conform to the rules and regulations of the planning board or the recommendations of the health board or officer and shall revoke its disapproval and approve a plan which, as amended conforms to such rules and regulations or recommendations."

[8] According to the *Doliner* court, it was unclear whether *any* subdivision regulations had been in effect in Millis at the time that the plan at issue was filed. *Doliner* v. *Planning Bd. of Millis*, 343 Mass. 1, 9 (1961). Consequently, in concluding that the Millis board could disapprove the plan for noncompliance with the applicable zoning by-law, the *Doliner* court presumed that authority for such a disapproval arises from the language of the subdivision control law itself, even where there is no provision in a board's subdivision regulations that mandates zoning compliance.

should consider the language of § 81M concerning zoning compliance and approve a plan that complies with the board of health's recommendations and the planning board's reasonable rules and regulations).

The general directive provided in § 81M, that a planning board should act with proper attention to zoning compliance, accommodates the respective purposes of planning and zoning law, as well as the role of the officers and boards charged with enforcing those laws and, when correctly applied by a planning board, impinges on no right of an owner. As stated in G. L. c. 41, § 81M, the purposes of the subdivision control law include "regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways, and ensuring sanitary conditions in subdivisions." A planning board's rules and regulations, adopted under the requirements of G. L. c. 41 § 81Q, address these general purposes by establishing definite standards for streets and utilities. "The subdivision control law attaches such importance to planning board regulations as to indicate to us that they should be comprehensive, reasonably definite, and carefully drafted, so that owners may know in advance what is or may be required of them and what standards and procedures will be applied to them. Without such regulations, the purposes of the law may easily be frustrated." *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 (1962). A planning board exceeds its authority if requirements are imposed beyond those established by the rules and regulations.[9] A planning board's subdivision rules and regulations thus define the standards that owners must meet for roads and utilities, as well as the grounds upon which a planning board may disapprove a plan. The rules and regulations provide specificity and substance to the general purposes of the subdivision control law in relation to the topics of control set forth in § 81M.

[9]For cases so holding, see *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 (1962); *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 176-178 (1977); *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 309-310 (1976). For cases upholding a planning board's decision because the decision was supported by the board's rules and regulations, see *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 438-445 (1981); *Nahigian* v. *Lexington*, 32 Mass. App. Ct. 517, 521-523 (1992); *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough*, 4 Mass. App. Ct. 79, 82-83 (1976).

With respect to zoning, the zoning ordinance or by-law satisfies the same principle that underlies the requirement for definite subdivision rules and regulations, namely, that owners are entitled to "know in advance what is or may be required of them." *Castle Estates, supra* at 334. Owners are deemed to be on notice of zoning requirements, and are governed by them, without any need for independent reference to the requirements in the subdivision rules and regulations. Indeed, the independent regulatory authority of the zoning ordinance or by-law is acknowledged, not only in G. L. c. 41, § 81M, but also implicitly in § 81Q, which restricts subdivision rules and regulations that might address matters within the scope of zoning regulations. As § 81Q states: "Except in so far as it may require compliance with the requirements of existing zoning ordinances or by-laws, no rule or regulation shall relate to the size, shape, width, frontage or use of lots within a subdivision, or to the buildings which may be constructed thereon . . . ." See *McCarthy* v. *Board of Appeals of Ashland*, 354 Mass. 660, 662-663 (1968) (under § 81Q, a planning board may only restrict lots to require compliance with existing zoning by-law and so lacks authority to restrict a lot to single family use where zoning by-law allows multifamily use).[10]

4. Finally, we consider Beale's remaining arguments that

---

[10]The conclusion that a zoning ordinance or by-law may lead to disapproval of a subdivision plan is reflected in decisions stating that neither approval of a subdivision plan under G. L. c. 41, § 81U, nor endorsement of a plan as not requiring subdivision approval, in accordance with G. L. c. 41, § 81P, prevents enforcement of a zoning ordinance or by-law by other authorities. See *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 807-808 (1981) (waiver of § 81L frontage requirements by a planning board under G. L. c. 41, § 81R, does not eliminate requirement for a variance from the board of appeals); *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 604 (1980) (G. L. c. 42, § 81P, endorsement does not preclude the enforcement of the zoning by-law). The *Arrigo* court, while upholding the planning board's authority to grant a waiver of the zoning frontage requirements, adhered to the position that a plan can be disapproved not just for noncompliance with subdivision rules and regulations or board of health recommendations, but also for violating the zoning frontage requirements incorporated in provisions for excluding certain land divisions from the subdivision approval process. *Arrigo, supra* at 806-807. See also *Silva* v. *Planning Bd. of Somerset*, 34 Mass. App. Ct. 339, 344-345 (1993) (planning board lacked authority to alter terms of a variance, as such a waiver would be inconsistent with the intent of the Subdivision Control Law, expressed in G. L. c. 42, § 81M and § 81Q, to ensure compli-

the planning board's decision exceeds its authority. Beale contends that: (a) the planning board's decision improperly extends the scope of Rockland's zoning requirements to block a permitted use of the Hingham portion of the land; (b) he should be granted relief from the planning board's decision because the disapproval bars any access to the land and imposes a substantial hardship; (c) the board lacks authority to prohibit construction of a roadway that is needed to provide adequate access to a neighboring subdivision, namely the Hingham parcel, as part of an interconnected road system; and (d) the planning board's decision amounts to a "regulatory taking" denying him any economically viable use of the land. Each of these contentions will be rejected.

(a) The potential indirect impact of the planning board's decision upon the use of the land in Hingham does not prevent Rockland from enforcing its own zoning by-law with respect to the land in Rockland. Where a parcel of land lies in two municipalities, each may apply its zoning laws to the portion that lies within its boundaries. See *Brookline* v. *Co-Ray Realty Co., supra* at 212-213; *Burlington Sand & Gravel, Inc.* v. *Harvard*, 26 Mass. App. Ct. 436, 439 (1988); *Chelmsford* v. *Byrne*, 6 Mass. App. Ct. 848 (1978). Beale's use of the portion of the land in Hingham is affected by the planning board's decision only because Beale seeks to use the land in Rockland for a use not permitted within Rockland's I-2 zone. Granting Beale the right to use the Rockland land for retail purposes would create a reverse extraterritorial effect: the uses allowed in Rockland would, in effect, be determined by the provisions of the Hingham zoning by-law. Beale essentially overlooks the fact that "[t]here are uses which can be made of [the] entire property. . . . The controversy . . . [thus] arises from the fact that [Beale] is not interested in any of those permissible uses and is attempting to by-pass [Rockland's] zoning by-law and to treat it as nonexistent so far as the [Rockland] land is concerned." *Brookline* v. *Co-Ray Realty Co., supra* at 212-213.

(b) Beale's contention about substantial hardship is based on *Lapenas* v. *Zoning Bd. of Appeals of Brockton*, 352 Mass. 530 (1967). *Lapenas* does not present a basis for overturning the planning board's decision.

ance with the zoning by-law and with requirements of other municipal boards acting within their jurisdiction).

The land at issue in *Lapenas*[11] had frontage on the easterly side of North Quincy Street in Brockton and was only accessible from that street. The boundary line separating Brockton and Abington, which runs just east of the street in the same north-south direction, bisected the land, with the result that a narrow strip fronted on the street within Brockton, while the balance of the land was within Abington. The Brockton portion of the land was in a residential zone, but the strip was too small to meet the Brockton zoning ordinance's requirements for residential use. The Abington zoning by-law, on the other hand, allowed only business use on the Abington portion, preventing its use for the residential purposes that would have been allowable on the Brockton land. The owners had unsuccessfully sought a variance from the Brockton zoning board of appeals to allow use of the residentially zoned land in Brockton for access to the business-zoned land in Abington. This court affirmed a decision that the variance should have been granted. Relying on *Harrison* v. *Building Inspector of Braintree*, 350 Mass. 559, 561 (1966), the court stated, "[t]here is no doubt that use of the strip for business access to other land is business use." *Lapenas, supra* at 532. The court decided, however, that the statutory conditions for a variance had been met, and that the Brockton zoning board of appeals erred by deciding that a variance would derogate from the character of the neighborhood and would not comply with the purpose of the zoning ordinance. Consequently, the owners were entitled to relief from the literal operation of the zoning ordinance. *Lapenas, supra* at 531-533.

*Lapenas* presents a very narrow exception to the principles expressed in the *Brookline* and *Harrison* decisions and is limited in its application by the peculiar facts involved. We point out the significant points of distinction between *Lapenas* and this case.[12] First, the denial of a variance by the Brockton zoning board of appeals effectively prevented the

---

[11]The *Lapenas* decision actually addressed two cases: one involved the named party, and the other was a companion case for a similarly situated parcel. The Lapenases owned a vacant parcel and proposed to construct a gasoline station on it; the owner of the other parcel was already using the property for commercial purposes and sought a variance to validate the existing use. See *Lapenas* v. *Zoning Bd. of Appeals of Brockton*, 352 Mass. 530, 530-531 (1967).

[12]The most obvious distinction is that *Lapenas* involved the denial of a variance, not the disapproval of a subdivision plan. The statutory condi-

plaintiffs in *Lapenas* from using either portion of their land for any purpose, in view of the inadequate size of the Brockton portion for residential use and the mutual exclusivity of uses allowed in the two zones. By contrast, in this case, the land in Rockland is usable by itself for purposes allowed under the Rockland zoning by-law. Second, the court noted in *Lapenas* that a provision of the Brockton ordinance allowed the owner of a split lot to extend any uses authorized in the less restricted zone into the portion of the lot within the more restricted zone, up to a distance of twenty-five feet from the boundary line. Consequently, had the Lapenases' parcel been located wholly within Brockton, they would have been able to use the narrow, residentially zoned strip for commercial purposes as a matter of right, without requiring a variance. The court reasoned that no purpose or intent of the Brockton zoning ordinance would be served by denying a variance for a use that would have been allowed by right if all the land had been in Brockton. *Lapenas, supra* at 531-533. These conditions do not exist in this case. The Rockland planning board has not denied to Beale any use that would be allowed if all the land was located within Rockland, and any extraterritorial impact is only incidental to the planning board's valid enforcement of the Rockland zoning by-law.

Beale also contends, by way of analogy to the situation in *Lapenas*, that the disapproval of the plan for the extension of Commerce Road in Rockland denies all access to the land in Hingham. However, the obstacle to access to the Hingham parcel is not a physical impossibility, but derives instead from the condition imposed by the Hingham planning board, that any access to the Hingham parcel be by way of a through road connecting to a public way in Rockland. Further, in the absence of an invalid purpose, such as was present in *Lapenas*, courts have upheld restrictions on use in one zone even when the restrictions make access to property in another zone

tions for the grant or denial of a variance, see G. L. c. 40A, § 10 (1994 ed.), are substantially different from those governing the review of subdivision plans. However, the court indicated in *Lapenas* that the plaintiffs could have sought relief from the literal operation of the zoning ordinance by other means besides applying for a variance, such as actions under G. L. c. 231A or under G. L. c. 185, § 1 (*j* $^1$/$_2$), and G. L. c. 240, § 14A. *Lapenas* v. *Zoning Bd. of Appeals of Brockton,* 352 Mass. 530, 533 (1967). Therefore, we choose to distinguish *Lapenas* from the present case on other grounds, without regard to this more basic distinction.

a physical impossibility, thereby effectively preventing use of the land in the less-restricted zone. See *Harrison* v. *Building Inspector of Braintree, supra.* See also *Chelmsford* v. *Byrne,* 6 Mass. App. Ct. 848 (1978) (injunction barring use of residential land in Chelmsford for access to industrial land in Lowell would not be arbitrary or invalid, if there is a lawful use for the Lowell land that is consistent with the Chelmsford by-law).

(c) We are not persuaded by Beale's argument that § 81M imposed a statutory obligation upon the Rockland planning board to allow an access roadway to the Hingham land, as part of an interconnected road system, and that the board therefore lacked the authority to disapprove the plan. Section 81M does indeed provide in part that a board is to regulate the layout and construction of proposed subdivision roads with "due regard" for providing adequate access to the lots within the subdivision, as well as for coordinating the proposed ways with each other, with public ways within the community, and with ways in neighboring subdivisions. However, these provisions simply authorize a board to ensure that any new roads that it approves are coordinated with the existing network of roads, both within and outside the subdivision.[13] Nothing in the language of § 81M compels the Rockland board to approve a plan that would result in a violation of that town's zoning by-law, in order to meet an asserted need for access to the Hingham parcel, or to satisfy a perceived need for an interconnected road system. To interpret § 81M otherwise would seriously undermine the authority granted to a planning board by the subdivision control law. Such an interpretation would also render ineffective the provision in § 81M, discussed above, that a planning board exhibit due regard for insuring compliance with applicable zoning by-laws.

(d) Beale's argument that the planning board's decision

---

[13]In the case cited by Beale on this issue, the Appeals Court upheld the authority of a planning board to require that a subdivision developer extend a road located on his own land so as to connect that road with an existing road on an adjacent property. *McDavitt* v. *Planning Bd. of Winchester,* 2 Mass. App. Ct. 806, 807 (1974). It is inapposite to the present case, in which Beale wishes us to require the Rockland board to approve his subdivision.

amounts to a "regulatory taking" was not made below. The argument is therefore not properly before this court. *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471 & n.25 (1991).

*Judgment affirmed.*