Sealund Sisters, Inc. *vs.* Planning Board of Weymouth.

No. 98-P-1517.

Norfolk. February 8, 2000. - October 26, 2000.

Present: Jacobs, Rapoza, & Gelinas, JJ.

*Subdivision Control,* Planning board, Regulations, Decision of planning board. *Zoning,* Blasting.

A planning board's disapproval of an otherwise conforming definitive subdivision plan, based on the anticipated effect of a specific subdivision construction process (blasting) on the surrounding areas, exceeded the scope of the board's authority, where such process did not violate a comprehensive, reasonably definite, and carefully drafted regulation of the board. [348-351]

Civil action commenced in the Superior Court Department on October 11, 1996.

The case was heard by *Thomas E. Connolly,* J.

*Gregory F. Galvin* for the plaintiff.

*George E. Lane, Jr.,* for the defendant.

Jacobs, J. The plaintiff appeals from a judgment of the Superior Court affirming the decision of the defendant planning board denying its application for subdivision approval of a fifteen lot project. At issue before us is the first of two grounds[1] relied upon by the board in rejecting the plaintiff's plan. That ground was stated as:

---

[1]The second ground for rejection was stated as: "The detention basin is too big. The basin extends across too many lots, (3) three, takes up too much of the lot area on each of the lots and the sides are too high." In its complaint, the plaintiff set forth both grounds of rejection followed by a general allegation that the board exceeded its authority in denying the subdivision plan. The judge, in his decision, noted both grounds for disapproval but did not address the second ground in the course of affirming the board's decision. The plaintiff's brief alludes to the second ground only to argue that it could have addressed the board's concerns if it had been allowed to do so and that, in any event, neither the town's engineering office nor board of health objected to the detention basin. The board, in its brief, addressed only the blasting issue. On this record, we are unsure whether the issue respecting the board's second

"The amount of blasting on site is too extensive. The length of time to complete the blasting, the number of trucks used to haul the blast material, associated noise and dust will be detrimental to the neighborhood."

We vacate the judgment. We also vacate the board's decision insofar as it is based upon this ground.

*Procedural background.* The plaintiff sought review of the board's decision in the Superior Court pursuant to G. L. c. 41, § 81BB. That review was conducted on the basis of the parties' joint statement of agreed facts, which was submitted with a request that the court, "in lieu of a trial," render a decision based on those facts.[2] The joint statement presented the issue to be determined as "[w]hether blasting, for which . . . the issuance of a permit rests with the discretion of the local fire department may be a factor in a local planning board's decision to deny approval to a definitive subdivision plan." The only facts in the submissions to the court bearing on that issue were that the board "expressed concerns relative to the amount of blasting that would have to take place in order for the applicant to complete the subdivision. From start to finish, it was estimated that twelve (12) to eighteen (18) months of blasting would have to occur."

In his memorandum of decision affirming the board's action, the judge concluded that the board had not exceeded its authority in denying the plaintiff's subdivision plan. He reasoned that "[w]hile the Fire Chief of the Town may issue a blasting permit this does not exclude the Board from evaluating the nature and effect of such blasting on the area and its residents." He also recognized the centrality of a planning board's rules and regulations to its review of subdivision plans by citing *Castle Estates, Inc.* v. *Park and Planning Bd. of Medfield,* 344 Mass. 329 (1962), and setting forth the following extract from the purpose clause of the town of Weymouth's subdivision rules and regulations:

"The subdivision regulations are adopted for the purpose of protecting the safety, convenience, and welfare of the

ground for denial was waived or reserved for later determination in the Superior Court or whether the parties have reached a settlement on the matter.

[2]By further agreement made in open court, the parties submitted the subdivision plans that had been filed with the board and the affidavits of an engineer and a member of the board.

> inhabitants of the Town of Weymouth by regulating the laying out and construction of ways in subdivisions . . . insuring sanitary conditions in the subdivision . . . the powers of the Planning Board shall be exercised with due regard for . . . reducing danger of life and limb in the operation of motor vehicles . . . securing safety in the case of fire, flood, panic and other emergencies . . . securing adequate provision for water, sewage, drainage . . . and other requirements where necessary in a subdivision. Rules and Regulations Governing the Subdivision of Land, Weymouth, Massachusetts: § 1.1 Purposes."

Relying exclusively on that provision, he concluded: "It is clear that the extensive blasting required to remove approximately 80,000 cubic yards of rock over a twelve to eighteen month period is a valid factor for the Board to consider in protecting the 'safety, convenience and welfare of the inhabitants of the Town of Weymouth.' "

*Discussion.* "A planning board exceeds its authority if requirements are imposed beyond those established by the rules and regulations." *Beale* v. *Planning Bd. of Rockland,* 423 Mass. 690, 696 (1996), and cases cited. "A planning board's subdivision rules and regulations thus define the standards that owners must meet . . . , as well as the grounds upon which a planning board may disapprove a plan."[3] *Ibid.* Those rules and regulations must be "comprehensive, reasonably definite, and carefully drafted, so that owners may know in advance what is or may be required of them and what standards and procedures will be applied to them." *Castle Estates, Inc.* v. *Park and Planning Bd. of Medfield,* 344 Mass. at 334.

The purpose section of the town of Weymouth subdivision rules and regulations mirrors the purpose provision of the subdivision control law as set out in G. L. c. 41, § 81M. Clearly contemplated by a subsequent section of that statute, § 81Q, is the adoption of comprehensive rules and regulations that are faithful to the fulfillment of that purpose, broadly stated as

---

[3]A planning board also has authority (not here at issue) to reject a plan if the proposed subdivision plan violates zoning requirements. See G. L. c. 41, §§ 81M & 81Q; *Beale* v. *Planning Bd. of Rockland, supra* at 695-696.

[4]General Laws c. 41, § 81Q, provides in pertinent part that "a planning

"protecting the safety, convenience and welfare of the inhabitants of the cities and towns."[4] G. L. c. 41, § 81M.

Absent a specific provision in its duly enacted rules and regulations, a planning board may not reject a subdivision plan based upon the anticipated impact of the subdivision upon surrounding areas. See *Massachusetts Broken Stone Co.* v. *Planning Bd. of Weston*, 45 Mass. App. Ct. 738, 742 (1998) ("Where a subdivision's impact on water quality was not a matter for consideration under the rules and regulations of the planning board, such impact could not provide the basis for disapproval of the plan"). See also *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 307-309 (1976); *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 176-179 (1977); *Vitale* v. *Planning Bd. of Newburyport*, 10 Mass. App. Ct. 483, 485-486 (1980). If a specific impact of a completed subdivision may not be considered by a planning board if it has not enacted regulations on the subject, it follows that the effect of a subdivision construction process may not be the basis for disapproval of an otherwise conforming subdivision plan unless it violates a "comprehensive, reasonably definite, and carefully drafted" regulation of the planning board. There is no need for us to decide, and we do not intimate, whether any aspect of a subdivision's construction process may be the subject of a planning board rule or regulation.[5] We hold only that a planning board may not base its disapproval of a definitive subdivision plan on the impact of the associated construction process absent

board shall adopt . . . rules and regulations . . . [that] set forth the requirements of the board . . . which requirements shall be established in such manner as to carry out the purposes of the subdivision control law as set forth in section eighty-one M."

[5]Our record does not contain the permit alluded to by the judge and the parties as having been issued by the town fire department, nor does it indicate the basis or procedure for its issuance other than references during hearings before the planning board to the fire department's being bound by new regulations that require a public hearing. We note that the State Board of Fire Prevention Regulations has promulgated comprehensive provisions regarding blasting and the use of explosives under authority of G. L. c. 148, § 9. See 527 Code Mass. Regs. §§ 13 et seq. (1996). Under G. L. c. 148, § 10A, and 527 Code Mass. Regs. § 13.04(11) (1996), a town or city fire chief may issue a blasting permit ("Use and Handling" permit) consistent with rules and guidelines within those regulations. In *Worcester Sand & Gravel Co.* v. *Board of Fire Prevention Regulations*, 400 Mass. 464, 466 (1987), the court observed that the Board of Fire Prevention Regulations "itself has long interpreted the statute as granting it exclusive and plenary jurisdiction to regulate all aspects of blasting in the Commonwealth. The board's consistent, long-standing

such regulation. It would defeat the established objective of permitting owners to "know in advance what is or may be required of them and what standards and procedures will be applied to them," *Castle Estates, Inc.* v. *Park and Planning Bd. of Medfield*, 344 Mass. at 334, if a planning board were permitted to base its disapproval of a subdivision plan exclusively upon the "safety, convenience, and welfare" provision of the purpose clause of its regulations.

This case is distinguishable from *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432 (1981), which dealt with a planning board regulation that specifically addressed "adequate access" from public ways, a subject also addressed by G. L. c. 41, § 81M. The court held that the term "adequate access" did not fail under a vagueness standard, noting that the analysis "must take into account not only the words themselves, but the entire context of the regulation attempted." *Id.* at 440. It also concluded that the phrase is consistent with "the *Castle Estates* rubric of definiteness." *Id.* at 442. The distinction between the regulation in that case and the regulation here is that the latter merely repeats the general purpose language of the statute while the former employed and expanded upon language in the statute explaining how the purpose of the statute was to be put into effect. *Id.* at 436 & n.4. Compare *Rattner* v. *Planning Bd. of W. Tisbury*, 45 Mass. App. Ct. 8, 11 (1998). In *North Landers*, the court also determined that the phrase in issue had a well-known significance in terms of sufficiency and suitability of streets to accommodate traffic and provide access for emergency vehicles. *Id.* at 441. The general purpose language under consideration here cannot reasonably be said to have any essential and specific significance or meaning either to members of a planning board or to land owners.[6] The legislative and decisional history of the subdivision control law gives no indication that an otherwise acceptable subdivision plan may be

interpretation of its own authority is entitled to a large degree of deference."

If a fire chief's authority over blasting is likewise exclusive, there is analogous authority indicating that a planning board may not limit or prohibit blasting for which the fire chief has issued a permit. See *Sullivan* v. *Planning Bd. of Acton*, 38 Mass. App. Ct. 918, 919-921 (1995). We need not address whether certain construction events incidental to blasting, such as the hauling away of blast materials and abatement of noise and dust, are within the regulatory jurisdiction of other municipal authorities.

[6]The record does not indicate whether the planned blasting was related to the "laying out and construction of ways" in the subdivision and neither the

rejected merely "because the board feels general public considerations make such action desirable." *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 163-164 (1959). A planning board does not have a roving commission. "The only purposes recognized [by § 81M] are to provide suitable ways for access furnished with appropriate municipal utilities, and to secure sanitary conditions." 1953 House Doc. 2249, at 54, the report of the special commission on planning and zoning. *Daley Constr. Co.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 153 (1959). Bobrowski, Massachusetts Land Use & Planning Law § 14.2 (1993).

Accordingly, we vacate the judgment insofar as it is based upon the first reason in the board's decision and remand the case to the Superior Court for a determination of the status of the board's second reason for denial (see note 1, *supra*). Unless it is finally determined that the plaintiff has waived judicial review of the second reason for denial, or unless the issue relating to that reason was reserved for later determination, the matter is to be remanded by the Superior Court to the board for further action on the plaintiff's definitive subdivision plan.

*So ordered.*

---

judge nor the board relied on that quoted portion of the purpose clause in their decisions.